GULF, COLORADO & SANTA FE RAILWAY COMPANY ET AL. v.
S. B. SANDIFER.

Decided May 24, 1902.

**1.—Railway Company—City—Street Crossing—Personal Injury.**

Where a railroad track crossed a street and by agreement between the company and the city a grade was established which left the approach to the crossing and embankment, constituting a part of the street, with a dangerous precipice at one side, the city and the company were both liable for injury to a traveler resulting from the absence of a guard rail along the approach.

**2.—Same—Contract Shifting Liability.**

In such case, it being the duty of both the city and the railway company and each of them to make the street and crossing safe, neither could relieve itself of this duty to the public by a contract with the other as to keeping the crossing in repair. Rev. Stats., arts. 4426, 4438.

**3.—Same—Joint Tortfeasors—Judgment Over.**

The city, having agreed with the railway company that the latter should build the approaches to the crossing at its own expense, and the city should forever keep them in repair, and having accepted the work in an unsafe condition and allowed it to so remain, was not entitled to judgment over against the company on judgment being recovered against it for damages resulting from the unsafe condition of the approaches.

**4.—Same—Proximate Cause—Guard Rail.**

   Where the approach to a street crossing was over an embankment with a precipice at one side, and while plaintiff was driving a gentle horse at night over the crossing the animal shied and fell, with the vehicle, from off the embankment, the want of a proper guard rail along the approach was the proximate cause of the resultant injury.

Appeal from Parker.   Tried below before Hon. J. W. Patterson.

*Cowan, Burney & Lee,* for appellant Gulf, Colorado & Santa Fe Railway Company.

*H. C. Shropshire* and *J. L. Moyer,* for appellant City of Weatherford.

*Howard Martin* and *H. L. Moseley,* for appellees.

HUNTER, Associate Justice.—By agreement of counsel two cases are embraced in this record.   One was filed by S. B. Sandifer in his own right against the Gulf, Colorado & Santa Fe Railway Company and the city of Weatherford to recover damages for personal injuries sustained by his wife and minor daughter, Miss Esther, occasioned by the sudden fright and shying of his horse while they were driving at night on Oak street, in the city of Weatherford, the same being an embankment and approach to the crossing of the said railway company's track across said street, whereby they with horse and buggy were precipitated from said embankment to the solid rock bottom of a ravine nine feet below, and were seriously, painfully, and permanently injured.   The other case was brought in the name of the said minor daughter by her father as next friend for serious and permanent injuries occasioned by said fall.

Each defendant filed a separate answer of not guilty and contributory negligence, praying that, in case judgment was rendered against it, it have judgment over against the other for the same amount,—the city claiming that the railway company was primarily liable because under the statute law of the State, as well as by the ordinances of the city of Weatherford, it was required to build the approach and keep it in safe and good repair, while the railway company alleged that in the compromise and settlement of a certain law suit then pending in the District Court of Parker County, wherein the city of Weatherford was plaintiff and this railway company was defendant, instituted to compel the railway company to restore the crossing of its track on Oak street to a good condition as required by law, it was agreed that the railway company should build a bridge and approaches thereto on Oak street, one of which lay between the said bridge and the railway crossing of the street, to the satisfaction of the city, and in consideration thereof the city was to forever maintain the same, and the suit was to be dismissed and settled; that it did build the bridge and approaches according to

the contract and they were accepted by the city, and by reason thereof the city was bound to keep the approaches to the crossing in repair and was liable to the railway company for failing to do so in case judgment was recovered against it by reason of the neglected condition of the approach.

The cases were tried by a jury, and verdict and judgment went against both defendants in each case as follows: In favor of S. B. Sandifer for $2023, and in favor of Miss Esther for $1500; and this appeal is prosecuted by the railway company, the city having filed in the District Court cross-assignments of error praying also for a reversal of the judgment against it.

The act of negligence alleged against both defendants was that the approach to the crossing of the railroad track was in Oak street and on the right of way of the railway company, and was dangerous, being about twelve feet high and without any railing or guard to protect travelers from falling over the same.

The record discloses the following facts: About 1890 the railway company built its track into the city of Weatherford, then as now an incorporated city under the general laws of the State, crossing Oak street at about a right angle. Oak street ran eastward from the business portion of the city to and beyond where the appellees resided on said street. The grade of the railroad track seems to have been a few feet above the grade of Oak street and the crossing was made bad by reason thereof. A controversy arose between the city and the railroad company over this crossing, which resulted in a suit by the city to compel the railroad company to lower the grade of its road at Oak street. This suit was finally compromised and dismissed, the order showing only that the suit was settled and dismissed, each party paying one-half the costs. The suit was settled by an oral agreement made by and between the general superintendent of the tracks, bridges, and buildings of the railroad company, and the mayor and street and alley committee of the city under authority of the city council (though no order appears to that effect), whereby the railroad company at its own cost was to build a bridge twenty feet wide and ninety feet long on and along Oak street across a ravine which crossed said street, beginning about eighty feet east of the track and extending eastward, and construct the approaches to said bridge at both the east and west ends thereof, and the city was to forever maintain the same and keep the same in repair. The bridge was to have railings on each side, but none was required for the approaches and none has ever been built. The approach at the west end of this bridge was constructed by raising a dirt embankment about three or four feet high and from nineteen to thirty feet wide between the railroad track and the west end of the bridge along and in Oak street, the bridge and embankment forming part of the street. The bridge and embankment were all on the railway company's right of way, which was 200 feet wide at this place, its track being on the west side thereof. The crossing and approaches were thus made good, and the mayor and

street and alley committee were satisfied with the work, and the city, as shown by oral testimony, accepted the same, but no order or resolution of the city council was ever entered on the minutes to that effect. At the west end of this bridge the embankment is about six inches narrower on each side than the bridge, and on the left side going west towards the track of the railway the embankment for forty or fifty feet from the west end of the bridge is precipitous and about nine or ten feet high from the solid rock bottom of the bed of the ravine. On the other side the embankment is about three to five feet high above the general level of the ground on that side.

About 8 o'clock at night of January 25, 1901, the wife and minor daughter of Mr. Sandifer were driving westward on Oak street in a buggy from their house going to prayer meeting at their church, which stood west of the railroad crossing. It was dark, but the horse was gentle and the way well known, and the ladies had often driven over the crossing both in the daytime and at night. After crossing the bridge the horse took sudden fright at something which the occupants of the buggy did not see or hear, and shied or jumped to the left and lost its balance and went down the embankment, the ladies being thrown from the buggy, Miss Esther falling on her face on the solid rock below and on her elbows, one of which is by reason of the injury, stiff and crooked now, and both were bruised and strained and have given her great pain. Mrs. Sandifer was bruised, and among other injuries suffered a fracture in the lower joint of the arm—known as Colles' fracture, which means, the doctors say, a split in the lower end of the arm bone. Her injuries are permanent and serious. She will not again have complete use of her arm.

There was no railing or fence along the embankment to prevent persons or vehicles from falling down the precipice, and by reason thereof the embankment was a dangerous approach to the railroad crossing, and both the city and the railway company knew its condition.

When the right of way across Oak street was granted to the railway company one of the ordinances of the city, as copied in the record, was as follows: "Every railway company constructing or operating its railway through this city and [shall] perpetually maintain good and sufficient crossings and culverts, and waterways for drainage, at all streets over which its roads may pass, including streets which may hereafter be laid out and opened, within the corporate limits of this city, and every person who shall willfully violate any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $25 nor more than $100."

The evidence was sufficient to warrant the jury in concluding that both the defendants were guilty of negligence in constructing and in allowing this embankment to remain without a fence or railing, and was sufficient to warrant the amount of the verdict in each case. There was no evidence of contributory negligence on the part of the plaintiffs or either of them.

The main contention of the railway company is that the embankment and bridge in this instance formed no part of the crossing of its track, nor of the approaches thereto, and hence it was under no legal obligation to the public or the city to make it safe in the first instance or to keep it in a safe condition by repairs; or, if it was its duty so to do, the city, for a proper and valuable consideration, had agreed to accept the work as done by it and keep it in good repair, so that, if it were liable in this case, it should have judgment over against the city for the amount of recovery against it.

Our law provides that by the consent of the city a railway company may construct its road along, upon, or across any street which the route of said railway shall intersect or touch, "but it shall restore the street thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness and shall keep such crossing in repair." Sayles' Civ. Stats., arts. 4426, 4438.

In compromise and settlement of the suit to compel the company to lower its grade across Oak street it was agreed by and between the city and the company that, instead of lowering the grade of the track, the bridge and the embankment or street between the track and the bridge should be constructed on a higher grade, thus restoring the crossing to its former usefulness. But in doing this a dangerous precipice was formed upon and along one side of Oak street at the west end of the bridge, and it became the duty of both the city and the railway company and each of them to make this street safe to the public, which by the erection of the embankment had become dangerous. It seems that the erection of a strong fence or guard rail would have been all that was necessary, and had either been there this injury would not have occurred.

This duty on the part of both city and company was a continuing one, for not only was each required to make the crossing and approach thereto safe in the first instance, but they were each equally bound by the law to keep them so, nor can either relieve itself of this duty and obligation to the public by a contract with the other or anyone else. It follows, then, that the judgment against each party defendant was correct.

The city is here earnestly contending that it should have judgment over against the company for the amount recovered against it upon the ground that the company was primarily liable for the injury, inasmuch as it was required both by the statutes of the State and by the terms of the ordinance under which it was permitted to build its track across the street to restore the street crossing to a useful and safe condition and keep it so. It is unnecessary for us to decide this question, because the facts in this case show that by the terms of the agreement to dismiss the city's suit against the company the latter was to build and construct at its own expense the bridge, approaches thereto, and embankment to the satisfaction of the city, while the city agreed to keep them forever in good repair. The evidence further shows that the city accepted the

work in its present unsafe and dangerous condition, and has let the embankment remain so for ten years. In the face of this agreement under which the city secured this improvement it does not lie in its mouth to claim damages over against the company when it had accepted the work in full satisfaction of the agreement, and has never since been heard to complain.

It is urged furthermore by both city and company that the failure to place a guard rail or fence on the embankment was not the proximate cause of the injury. We think it was. If it had been there at the time and had been of sufficient height and strength the fall and consequent injuries would probably not have occurred. The shying, scaring, and jumping of horses at such places are not unusual occurrences, especially at night, even among the gentlest, and both the city and railroad company must be held to know this, and the consequent danger of leaving such precipices at such places unguarded by fence or railing. City of San Antonio v. Porter, 24 Texas Civ. App., 444, and case there cited.

We have examined all the assignments of error and overrule them, and, as the views above expressed dispose of the cases, we deem it unnecessary to discuss the assignments seriatim.

The judgments are in all things affirmed.

*Affirmed.*

Writ of error refused.