Halys Wininger, by Next Friend, v. Ft. Worth & Denver City Railway Company.

No. 2375.   Decided February 21, 1912.

**1.—Court of Civil Appeals—Reversal—Rendering Judgment.**

The Court of Civil Appeals may reverse a recovery by plaintiff which is against the preponderance of evidence, but can not render judgment for defendant if, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion in his favor to be drawn from the facts proven, a jury might have found for him. (P. 58.)

**2.—Same—Negligence—Injury to Child.**

Evidence considered, in case of a child crossing the switching yards of a railway in company with its father and injured while passing through a gap between cars standing on the track by their movement by the operation of switching, and held to support such possible inference of negligence on the part of those moving the cars without warning when the child's presence was known and her position of danger might have been anticipated, as to render it improper, on reversing a recovery as being against the evidence, to render judgment for the defendant. (Pp. 58-62.)

**3.—Same—Child Under Care of Parent—Case Distinguished.**

This case distinguished from Blossom Oil & Cotton Co. v. Poteet, 104 Texas, 230.. (P. 62.)

Error to the Court of Civil Appeals, Seventh District, in an appeal from Donley County.

Halys Wininger, by next friend, sued the railway company and had judgment. On defendant's appeal this was reversed and rendered for defendant. Appellee then obtained writ of error.

*A. T. Cole* and *Odell & Johnson,* for plaintiff in error.—It was error for the Court of Civil Appeals to render judgment. The evidence was sufficient to raise the issue of defendant's negligence. Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; Gulf, C. & S. F. Ry. Co. v. Hewitt, 67 Texas, 473; Texas & P. Ry. Co. v. Watkins, 88 Texas, 25; Missouri, K. & T. Ry. Co. v. Hammer, 34 Texas Civ. App., 354; St. Louis S. W. Ry. Co. v. Bolton, 81 S. W., 125, 36 Texas Civ. App., 87; Galveston, H. & N. Ry. Co. v. Olds, 112 S. W., 787; Texas & N. O. Ry. Co. v. Brouillette, 130 S. W., 886; Houston, E. & W. T. Ry. Co. v. Adams, 44 Texas Civ. App., 288; Houston, E. & W. T. Ry. Co. v. Ollis, 83 S. W., 850, 37 Texas Civ. App., 231; Ollis v. Houston, E. & W. T. Ry. Co., 73 S. W., 30, 31 Texas Civ. App., 601; Gulf, C. & S. F. Ry. Co. v. Coleman, 112 S. W., 620.

The issue of negligence by failing to give signals before moving the cars was clearly raised. St. Louis S. W. Ry. Co. v. Crosnoe, 72 Texas, 79; Houston & T. C. Ry. Co. v. Boozer, 70 Texas, 530; Texas & P. Ry. Co. v. Watkins, 26 S. W., 760; Gulf, C. & S. F. Ry. Co. v. Garrett, 99 S. W., 162; Gulf, C. & S. F. Ry. Co. v. Matthews, 99 Texas, 160.

The appellee being an infant of tender years, any negligence on the part of her father would not be imputable to her in a suit by her in her own right for injuries resulting from the negligence of appellant, and any such negligence on the part of her father would not justify the court in withdrawing such issues from the jury. Douglass v. Texas C. Ry. Co., 26 S. W., 892; Western U. Tel. Co. v. Hoffman, 80 Texas, 424; Williams v. Railway Co., 60 Texas, 205; Texas & P. Ry. Co. v. Fletcher, 6 Texas Civ. App., 736; Railway Co. v. Moore, 59 Texas, 64; Railway Co. v. McWhorter, 77 Texas, 356; Railway Co. v. Beckworth, 32 S. W., 809.

*Spoonts, Thompson & Barwise, H. B. White* and *Turner F .Wharton,* for defendant in error.—The evidence wholly failed to show liability on the part of the defendant. St. Louis S. W. Ry. Co. v. Shifflet, 98 Texas, 326; International & G. N. Ry. Co. v. Vallejo, 102 Texas, 70; Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Texas, 196; San Antonio & A. P. Ry. Co. v. McMillan, 100 Texas, 562; Railway Co. v. Breadow, 90 Texas, 26; Houston & T. C. Co. v. O'Donnell, 99 Texas, 636; Missouri, K. & T. Ry. Co. v. Haltom, 95 Texas, 112; Missouri, K. & T. Ry. Co. v. Sharp, 120 S. W., 263; St. Louis & S. W. Ry. Co. v. Davis, 110 S. W., 939; Douglas v. C. T. & N. W. Ry. Co., 90 Texas, 125; Galveston, H. & S. A. Ry. Co. v. Kieff, 94 Texas, 334; Artusy v. Missouri Pac. Ry. Co., 73 Texas, 194; Texas & P. Ry. Co. v. Staggs, 90 Texas, 458; Cowles v. Missouri, K. & T. Ry. Co., 96 Texas, 24.

Clearly, if it was not the duty of the conductor to keep a lookout in the direction of plaintiff and her father and to watch their movements, then it was not necessary that he should give a signal before backing the train. This is well established by the cases of Ft. Worth & D. C. Ry. Co. v. Shetter, 94 Texas, 196; San Antonio & A. P. Ry. Co. v. McMillan, 100 Texas, 562; Railway Co. v. Breadow, 90

Texas, 26; Houston & T. C. Ry. Co. v. O'Donnell, 99 Texas, 636; Railway Co. v. Haltom, 95 Texas, 112; Douglas v. Railway Co., 90 Texas, 125; Railway Co. v. Vallejo, 102 Texas, 70; Railway Co. v. Shiflett, 98 Texas, 326.

Mr. Chief Justice Brown delivered the opinion of the court.

The Honorable Court of Civil Appeals of the Seventh District reversed the judgment of the trial court, which was in favor of Halys Wininger, and rendered judgment for the railroad company, saying:

"We are of the opinion that the evidence, taken as a whole, fails to show such negligence as is alleged in the petition, on the part of appellant or its employees, proximately causing the injury complained of, and that therefore the requested charge should have been given and that for failure to give same this cause should be reversed; and as the case appears to have been fully developed on the trial below, judgment should here be rendered for appellant; and we think the facts hereinbefore found, together with the necessary deductions to be drawn therefrom, sustain said conclusion."

The Honorable Court of Civil Appeals had authority to reverse the judgment of the trial court on the preponderance of the evidence, but it could not render the judgment, if, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.

The Honorable Chief Justice of the Court of Civil Appeals of the Seventh District made a very careful and elaborate statement of the evidence which will greatly aid this court in reaching a conclusion upon the issue before us.

Clarendon is the county seat of Donley County, and the road of the defendant company passes through the town, we will say from east to west, dividing the town so that hotels and some business houses and residences are north of the tracks, but the main business houses, churches and schoolhouses are on the south of the railroad track. The tracks of the railroad extended from east to west, as before stated, and the sidetracks and switches; in fact, the yards of the railroad were located on the north side of the track, embracing about 400 feet north and south and 3000 feet east and west. Three switch tracks were located on the north side of the main track, numbered one, two and three, and one switch track on the south. A water tank and coal chute were located on the yards.

"The company's said yards had been enclosed by a post and wire fence for many years, but the fence was not in good repair at the time of the injury and had not been for some time prior thereto, there being places where the wire was loose from the posts and in one or two places the top wires had been tied together so as to allow easy passage of pedestrians through the fence, and those who had occasion so to do had been for many years going through and over said fence and across said yards and tracks to such an extent as to make reasonably well beaten paths along and across said yards, and which existed at the time of the occurrence; children living in the

same vicinity with appellee on the north side of the tracks, had been habitually going and coming across said yards in attending school on the south side thereof.''

''Garnet Street is the first open street east of the yards connecting the north and south sides of the city, and it was generally used by persons in the northeast and southeast portions of the city in passing from north to south over the line of railroad.''

''Appellee resided with her father in the southeast corner of block No. 238, the east boundary line of which forms the west boundary of Garnet Street and it is the second block north from the company's yards, his residence being about five or six hundred feet a little west of north from where the company's main line crosses Garnet Street; the church to which appellee and her father had started when she received her injuries was situated in the northeast corner of block No. 42, being the fourth block and about seven or eight hundred feet south of the company's main line, and between Gorst and Kearney Streets; it is thus seen that appellee resided northeast of the company's yards and the church to which she was going was southwest thereof.''

''On Sunday morning, about nine o'clock, about April 25, 1909, appellee, in company with her father, left their home to go to church, intending to cross the railroad on Garnet Street, but as they came out of their residence they saw that an engine and train attached headed east was standing across Garnet Street, so they took one of the trails or paths mentioned, leading in a southwest direction, and followed it until after they got into the company's yards, passing on to the yards about one thousand feet east of the water tank, and reached switch track No. 3 at about nine hundred and fifty feet east of the water tank; but as there was a string of cars on track No. 3, they continued in a west course on the north side of the track until getting within about five or six hundred feet of the water tank. They came to the caboose, which had been cut loose from the train, and here they crossed track No. 3, east of the caboose, so as to be between it and track No. 2, and continued their journey west; about the time they were passing the caboose they passed also the conductor, who was on the ground between tracks Nos. 2 and 3 and near the west end of the caboose, he seeing them and they him; there then being a string of cars on track No. 2, they continued their journey west between tracks 2 and 3 to a point slightly east of the water tank, when they tried to cross track No. 2, by going between cars and which were separated a space of six to eight feet on track No. 2, and in attempting to cross track No. 2 at this point appellee received her injury by a car which was moving west on track No. 2, the father at the time being from one to two steps ahead of her; at the time they passed the conductor and brakeman as hereinbefore mentioned, the father was slightly ahead of the child. While appellee and her father were going west between tracks 2 and 3, after they had passed the conductor, they saw the rear brakeman on top of the train then on track No. 2 and he saw them, and they passed on by.''

''There was a long string of empty box cars standing on track No. 2, extending from about fifteen to twenty cars east of the water tank

to twenty or twenty-five cars west of it. This string of cars being uncoupled in two or three places, leaving a short space between where uncoupled.''

''As the crew were backing in on track No. 2 the second time to pick up the first division of their train left there, while moving from two to six miles per hour, they backed against it, causing it to move the string of cars west and on the same track, and appellee was injured about fifteen cars west of where the crippled car was, and by one of the cars which was on the track when the freight train pulled into the yards, and one not belonging to the train, being handled by the crew.''

''At the time the injury was inflicted, the east end of the train was pointing south of east and the west end of it south of west, so as to place the most northerly portion of the train about the middle thereof and about opposite where the caboose stood, making a curve in the south side of the train.''

''The conductor, at the time of the injury, was about thirty-one to thirty-five car lengths from the engine and was on the north side and could have seen appellee and her father at all times after they passed him, until they passed behind a car on track No. 2, which caused the injury.''

''The train and crew were under the control and direction of the conductor, the crew consisting of the conductor, the rear and head brakeman and the fireman and engineer.'' No bell was being rung nor whistle blown during the time.

We add to the foregoing statement the testimony of the plaintiff, E. H. Wininger, as follows: ''That fence (enclosing the railroad yards) has been kept temporarily up all the while, but has always had gaps through the wire admitting the passage of persons. The wire is lowered and raised so as to go through there and people cross there all the time. There are four well defined passageways between Carhart Street and Garnet Street that have been constantly used up to the time of this accident.'' The witness testified to walking between the second and third tracks until he reached the first opening between the cars, and said: ''When we got to the open space there between the cars, and it was the first opening we came to, there was no signal of any kind to indicate that the engine was going to move the string of cars. There was no ringing of the bell or blowing of the whistle. There was no signal of any character or kind given to warn anyone that the train was about to move. There was no signal given up to the time of the accident. In crossing this track here she and I started across the track—that is, the little girl Halys and myself, and she was possibly a little behind me. I had let her go with me and had led her along up the track there for awhile, and her nature is to want to be free and she said, papa, let me go, and I did so. She said: 'Papa, let me go; I can get along all right without you holding my hand.' Just before we started across here—we started across and I was possibly a step or a step and a half ahead of her. She was on my left and expecting nothing to happen I did not have my eye on her directly all the time, but when this noise came down the string of cars—that is, the noise of the cars being hit by

the engine—the noise of the cars being hit together by the engine seemed to excite her and she stepped quickly about to the south rail of the middle siding and started to spring and slipped back over this south rail of the middle siding—she slipped to the north side of the south rail of the middle siding and I started to grab her, but before I could get hold of her the wheel had passed over that foot and limb. I grabbed the child, but it was too late—the accident had already occurred and her leg and foot were cut off. I took the child in my arms and some way got on the north side of the track. There is a space there that I know nothing about—there is a little space there from the time I grabbed the child—the next thing I knew I was on the north side of the track, facing towards home with the child in my arms.''

We have omitted all facts which are adverse to plaintiff's claim and have stated, as we believe, the view of the evidence most favorable to the plaintiff.

In Lee v. International & G. N. R. Co., 89 Texas, 583, this court said: ''Negligence, whether of the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. Baltimore & O. R. Co. v. Kane, 69 Md., 11, 9 Am. St. R., 395; Baltimore & O. R. Co. v. Griffith, 159 U. S., 603; Grand Trunk Ry. Co. v. Ives, 144 U. S., 417; Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Texas, 547; Chatham v. Jones, 69 Texas, 746.'' The test there laid down has been frequently approved and reiterated by this court. That test must be applied in determining whether the Court of Civil Appeals had authority in this case to render this judgment.

The evidence is amply sufficient to authorize a conclusion that the yards were constantly used by persons to pass from one side of the tracks and yards to the other and that the school buildings and churches were on the south side. Such constant use was sufficient to charge the railroad company with notice thereof and to impose on its employees the duty to use ordinary care to prevent injury to such persons as might be passing through the yards. The evidence would justify the conclusion that the father and child were in this instance attempting to cross the track on their way to church or Sunday-School. They would have crossed at Garnet Street, but that was blocked by a train. That in passing over the third (north) track going south the purpose to cross the yards was manifested and at this point the conductor of the train which caused the injury saw them and must have known from the direction in which they were going that they would probably cross the second track at the first opening; he could have seen the man and child from the time they crossed the third track until he caused the cars to move against those standing on the second track. The jury were authorized to conclude that he did see them and knew their purpose, and without giving notice he caused

the train under his control to move back against the car which caused the injury. The evidence would support a conclusion that the conductor was negligent in failing to see that no one was in position to be injured by the movement of the cars. The evidence would warrant a jury in finding that the failure to give any warning signal of the intended movement of the train constituted negligence on his part which caused the injury to the child. There is evidence which controverts some of the facts stated from which a jury might draw different conclusions, and nothing said by us should be regarded as passing upon the evidence as a whole. The evidence showed such use of the yards in question as required of the employees of the railroad company to use ordinary care to discover any persons who might be using the yards, and the conductor knowing of the presence of the father and child in the yards was required by the law to give notice of the movement of the cars. Texas & P. Ry. Co. v. Watkins, 88 Texas, 25. It would be superfluous to cite other authorities.

The case of Blossom Oil & Cotton Co. v. Poteet, 104 Texas, 230, rests upon different facts and was controlled by different principles of law. In that case there was no act of any employee of the oil company that caused the injury; liability was predicated upon the negligence of the employees of the company in permitting the young child to remain in the mill and to get into the place of danger. This court held that the fact that the child was with the father and mother relieved the company from any obligation to care for the child. In this case the father was caring for the child, which was not injured by any act of hers, but the negligent acts of the servants of the railroad company. If the father had been injured instead of the child he could have recovered. The cases are wholly dissimilar.

The Honorable Court of Civil Appeals erred in entering judgment for the railroad company, which judgment we reverse. The Thirtieth Legislature at its first called session amended article 975, Revised Statutes, to read:

"Whenever the Supreme Court on the trial of a cause brought from any Court of Civil Appeals shall affirm the judgment or decree of such court, or when said court shall proceed to render such judgment or decree as should have been rendered by the Courts of Civil Appeals and such judgment shall be for the same or a greater amount, or of the same nature as rendered in the court below, said supreme Court shall render judgment against plaintiff in error and his sureties on his bond, a copy of which shall always accompany the transcript of the record. If the judgment of a Court of Civil Appeals shall be reversed, the Supreme Court may remand the case to the Court of Civil Appeals from which it came for another trial, or the District Court, as to the Supreme Court may seem proper."

This cause is remanded to the Honorable Court of Civil Appeals to be disposed of in accordance with this opinion.

*Reversed and remanded.*