## JOHNSON v. TAYLOR. (No. 3333.)

Court of Civil Appeals of Texas. Amarillo.
Dec. 11, 1929.

R. L. Graves, of Brownfield, for appellant.
Lockhart, Garrard & Brown, of Lubbock,
for appellee.

RANDOLPH, J. This case has been before
this court at another time, and is reported in
9 S.W.(2d) 468.

W. S. Johnson, as plaintiff, brought suit
against M. Taylor upon a promissory note.
On suggestion of the death of M. Taylor, his
wife, M. E. Taylor, was made defendant here-
in, and judgment sought against her. On
trial before a jury, and on issues submitted to
and answered by them, the trial court ren-
dered judgment that the plaintiff take noth-
ing by his suit, and that the defendant go
hence without day. The plaintiff has ap-
pealed to this court for a review of the pro-
ceedings in the trial court.

The plaintiff, in his petition, declares upon
a promissory note in writing in the sum of
$2,493.71, executed by M. Taylor, and payable
to the order of the plaintiff.

The defendant filed her answer, consisting
of a general exception, general denial, and a
special plea alleging at length that the note
sued on was given in renewal of a note orig-
inally given in payment for certain shares of
stock in a corporation known as the Stock
Raisers' Loan Company, and that such trans-
action was in violation of the provisions of
the Constitution and laws of the state of Tex-
as, and the note was therefore void.

The plaintiff's first assignment of error
is: "The Trial Court erred in refusing to sub-
mit to the jury plaintiff's peremptory instruc-
tion because at the close of the testimony of
the witness Mrs. Taylor regarding the $2,000.-
00 note of date March 17, 1920, as being hear-
say, and the testimony of said witness as to
what Aunt Lou told her as being hearsay and
the jury was instructed to disregard all said
testimony and there was not sufficient evi-
dence left to submit any issue to the jury."
This assignment is followed by five proposi-
tions alleged to be under said first assignment
of error.

We do not deem it necessary to discuss this
assignment or the propositions based upon it.
There is nothing in the record to sustain the
allegations made in the assignment. The rec-
ord does not contain the motion alleged to
have been made by the plaintiff to strike out
Mrs. Taylor's testimony, there is no judgment
sustaining or overruling said motion, and no
bill of exception to the admission of Mrs. Tay-
lor's testimony in evidence. The only refer-
ence in the record to a motion to strike out
Mrs. Taylor's testimony is contained in the
motion for a new trial. We cannot consider
such reference as supplying the record evi-
dence of the action of the trial court in the
absence of an order entered in the minutes or
a bill of exception setting up the refusal to
strike the hearsay testimony or the failure
of the trial court to recognize his action in
striking the testimony for the reasons stated.

The record failing to supply evidence of the
matters recited so that we could have con-
sidered same, it only remains for us to con-
sider the question as to whether or not there
was sufficient evidence to justify the verdict
and judgment.

The Supreme Court, in the case of Wining-
er v. Railway, 105 Tex. 56, 143 S. W. 1150,
lays down the rule that "if, discarding all
adverse evidence, and giving credit to all evi-
dence favorable to the plaintiff, and indulging
every legitimate conclusion favorable to the
plaintiff which might have been drawn from

the facts proved, a jury might have found in favor of the plaintiff," then there was evidence to support their verdict. See, also, Cartwright v. Canode, 106 Tex. 507, 171 S. W. 696; Pennsylvania Life Ins. Co. v. W. T. Waggoner Estate, 24 S.W.(2d) ——.[1]

While the plaintiff's witnesses testified that the original of the note sued on was given for money loaned and not for stock in the Stock Raisers' Loan Company, that issue was sharply contested. In his motion to strike the testimony, as alleged in the motion for new trial, no part of Mrs. Taylor's testimony is pointed out as being hearsay, and, if any part of it is not hearsay and there was made a motion to strike it out without indicating that part of the testimony which came under the rule of hearsay, the court did not err in refusing to consider the motion as made by refusing to abide by his striking of said testimony if he did do so.

It is true that a portion of Mrs. Taylor's testimony seems to come within the hearsay rule, but, on a careful reading of said testimony, we find that much of it was not subject to the objection made. Her testimony as to the agent of the corporation coming out to the farmhouse of herself and husband, her testimony that Copeland, the vice president of the bank, stated that the note was for the stock shares in the stock raisers' association, forms a basis for the jury's verdict in connection with all the circumstances introduced in evidence, which we do not feel called on to recite at length.

Dallas, the president of the bank, testified: "I testified in this case before. I do not know just what my testimony was before, whether I testified that the bank bought this note and whether I knew and the bank knew what the note was given for. I do not think I did. I just checked up on the proposition. I knew that it was not given for stock in the corporation."

One of the attorneys for the defendant was placed on the stand and testified:

"My name is Franklin D. Brown. I am one of the attorneys representing the defendant in this case. I was one of the attorneys and was present at the trial of this case once before. It was tried in the January term, 1928. At that time Mr. W. H. Dallas testified as a witness in this case. Mr. Dallas testified that he bought this note from the Stock Raisers Loan Association. This specific note for $2,000.00, made payable to 'myself.' He said he purchased that note from the Stock Raisers Loan Association, and he was asked the question if he did not have an agreement with the representative of the Association to purchase all the notes that were sold out here and he said 'We took those that were satisfactory to us.' He said, 'I knew what the note was given for when I bought it; that it was given for stock in this corporation.' After the trial of

this case, I had an occasion to meet W. S. Johnson, the plaintiff in this case, when he came in to our office one day. He said he had been down at Brownfield to learn about the case and said that nobody would tell him anything about it and came to us to see if he could find out, and I told him as nearly as I could what it was about. He said he did not know the case had been tried until he came to Brownfield, which was after the case was reversed. * * *

"He said he did not know anything about the loan. I think I made a speech in this case at the other term when it was tried. I do not know what I said in that speech."

The plaintiff takes the position that the testimony of the attorney could only be used to impeach Dallas, and could not be affirmative evidence to establish defendant's defense. We recognize the soundness of the rule thus stated, but do not indorse it as fully applicable to this case.

On the former appeal, this court stated: "The evidence discloses without contradiction that the original note and the renewals thereof were given for stock, and that the bank, at the time it purchased the original note and took the renewals thereof, had actual knowledge of the purpose of and consideration for said notes, and tends to show that it acted for appellant in obtaining the note sued on." 9 S.W.(2d) 468, 469. We do not make this quotation as any evidence in the case at bar, and realize that the case cannot be tried here on the record made on the former appeal, but we do quote it for the purpose of stating that the change in the testimony of Dallas is so incomprehensible that the jury, in view of Brown's testimony, were fully authorized to discredit Dallas' evidence.

We therefore affirm the judgment of the trial court.