## GROSS v. SHELL PIPE LINE CORPORATION.

### No. 9652.

Court of Civil Appeals of Texas. Galveston.

Feb. 10, 1932.

Harry Dow and Daniel Schlanger, both of Houston, for appellant.

Cyrus S. Gentry, of Houston, and Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., for appellee.

GRAVES, J.

This statement, conceded to be substantially correct, is taken from appellant's brief:

"I. Gross, hereinafter referred to as plaintiff, a resident of Houston, in Harris County, Texas, brought this suit against the Shell Pipe Line Corporation, hereinafter referred to as defendant, a corporation organized and operating under the laws of the State of Maryland, with a permit to do business in the State of Texas, alleging that he was the lessee of certain premises known as the H-Cross (H-X) pasture, and had cattle grazing thereon, and that on or about the month of February, 1929, the defendant Corporation, entered into said premises for the purposes of laying pipe, and that defendant's crew of men negligently cut gaps in the fence which surrounded plaintiff's pasture and permitted these gaps to remain open, and that cattle belonging to the plaintiff strayed through these gaps and were lost. That, as a direct and proximate result of the negligence of the defendant in so cutting the gaps and going to and fro in plaintiff's pasture, plaintiff was damaged in the following amounts: Twenty-five ($25.00) dollars for the destruction of the grass; two hundred ($200.00) dollars for the loss to the cattle by being chowsed; one hundred and twenty-five ($125.00) dollars for one (1) mule which was lost through the gaps; one hundred and fifty ($150.00) dollars for one Brahma bull which was lost through the gaps; three hundred ($300.00) dollars for five (5) cows which were lost through the gaps, and one hundred ($100.00) dollars for labor and use of horses used for the purpose of gathering in the strayed cattle, which strayed through the gaps, making a total of eight hundred and seventy-five ($875.00) dollars, plus interest.

"The defendant answered by general demurrer and general denial. The plaintiff, by his attorney, requested a postponement of the case for one day, and this being overruled, the case was heard on its merits with a jury. After the plaintiff introduced his evidence and rested, the defendant, without introducing any evidence, requested the court to grant an instructed verdict for the defendant on all issues, except the value of the grass, which the defendant was willing to set at five ($5.00) dollars, and requested the court to instruct the jury to return a verdict of five ($5.00) dollars as the value of the grass destroyed by the defendant, which the court did, and upon same rendered judgment in favor of plaintiff for five ($5.00) dollars as the value of the grass, to which plaintiff, then and there, excepted in open court."

Under the peremptory instruction given, the main question the appeal presents is: Did the plaintiff's evidence raise an issue of fact over whether or not negligence on defendant's part proximately caused such damage to the plaintiff in any of the respects alleged as required the submission of the inquiry to the jury? · If it did not, the judgment should be affirmed, in the absence of prejudicial error in other respects; otherwise a reversal must be ordered. Under the now well-settled rule laid down by our Supreme Court in Wininger v. Ft. Worth & D. C. Railway Co., 105 Tex. 56, 143 S. W. 1150, that inquiry must be answered in the affirmative "if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." See, also, Texas & P. R. Co. v. Cox, 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829; Brown v. Griffin, 71 Tex. 654, 9 S. W. 546; Texas & P. R. Co. v. Ball, 96 Tex. 622, 75 S. W. 4; International & G. N. Ry. Co. v. Tinon (Tex. Civ. App.) 117 S. W. 936.

When gauged by that test, it seems clear such a finding for plaintiff might have been made here, especially as affected the claimed escape from the pasture and consequent loss of several head of his stock; there was direct testimony to the effect that his inclosing pasture fences were in good condition—with no broken places in them, and would turn stock—prior to the time in the early part of 1929, probably February, when defendant's pipe line crew, without the plaintiff's permission, went through there with trucks, ruining the grass for four or five months on a strip from five to twenty feet wide across the pasture's entire extent of about one mile, and cutting gaps in its fences, leaving them in that condition for several days; that, as the plaintiff himself and his caretaker for the fences and stock, respectively, said:

The plaintiff:

"The fences around my pasture during the early part of 1929, January and February, 1929, were in good shape. I had a man riding them pretty near every day to keep them up; they were four wire fences. * * * I knew the cattle I had in there before the crew of men went through there. I had been out to that pasture pretty near every week, and sometimes twice a week; I went out there that often before the pipe line went through there. I had occasion to observe whether or not the cattle were there at that time. They were in the pasture. * * * Prior to January, 1929, none of my cattle ever have gone through the outside fence.

"After the pipe line went through there the fence was in good shape outside of the gaps where they went through there. The gap was

wide enough for a truck or a tractor to go through. The gap was just at that place; that's all. * * *

"After the gaps were left in the outside fence, we missed a good many cattle down there. * * * But at the conclusion we missed about seven or eight head of cattle and a bull and a mule, which we never did find."

The caretaker:

"I missed some cattle after the pipe line went through. The cattle that were missing, that I really noticed, in a way is like you'd see some the other day and you'd know the cattle. Next time we dipped, some of them were missing. Two baldfaced cows, two droop horn spotted cows and two duns were missing. We also missed a bull and a mule. That was a Brahma bull, a dun bull, about three years old. The brand on it was M–6. I also missed a mule, a black mule about five years old, about fifteen hands high.

"After I saw the gap in the fence I repaired it; I repaired it three or four different times."

There was further testimony as to the value of all plaintiff's stock thus said to have been finally lost, as well as to the cost of hiring men to hunt up and return others that were found outside the pasture at the same time.

■ This evidence alone, when given the full credit that must be accorded it for the purposes of this inquiry, clearly entitled the plaintiff to a hearing before the jury on his claims of damage for stock lost, irrespective of the additional one for the value of grass alleged to have been destroyed; as concerns that, since the claim was entirely unliquidated, under well-settled authority (Galveston, H. & S. A. R. R. Co. v. Templeton, 87 Tex. 47 26 S. W. 1066, Dallas Hotel Co. v. Newberg [Tex. Civ. App.] 246 S. W. 754), the question as to its existence and extent was one for the jury—and not for determination by the court either arbitrarily or through agreement with defendant's attorney—if there was any evidence upon which a reasonable estimate of the amount of grass destroyed could properly be based; if there was not, that alleged element of damage did not become an actual issue in the case at all, for failure of sufficient proof. We conclude that the latter is the state of the record upon that feature, wherefore it was error for the court to peremptorily in effect mulct the defendant for even the insignificant sum of $5 on account of it.

If there were material errors in other respects complained of, they may not occur upon another trial; for these pointed out, the judgment has been reversed, and the cause remanded.

Reversed and remanded.