**CITY OF EL PASO v. MENDOZA et ux.**

No. 4423.

Court of Civil Appeals of Texas. El Paso.

June 21, 1945.

Rehearing Denied July 12, 1945.

Travis White, City Attorney, of El Paso, for appellant.

Robert L. Holliday and Harold L. Sims, both of El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from the District Court of El Paso County, 41st Judicial District. In an action instituted by Francisco Mendoza and his wife against the City of El Paso for damages on account of the death of their minor son Lionides, plaintiffs in a trial before the court without a jury recovered judgment against the city in the sum of $3,067.50. Plaintiffs charged the city with negligence in that a temporary walkway or passageway across the intersection of Park Street with the Franklin Canal erected for the purpose of permitting pedestrians to cross while the bridge over said intersection was in the course of repair was not reasonably safe and the construction of said walkway in such manner was negligent, the proximate cause of the death of their son. The negligence was specifically charged in several particulars. The defendant pled general denial, contributory negligence on the part of the deceased minor and contributory negligence on the part of plaintiffs in failing to warn their son of the danger of the crossing where he was drowned; further that defendant long prior to the act complained of had conveyed the portion of the street consisting of the bridge in question to the United States in pursuance of the valid ordinance and that the city had no right of control or duty in reference to such crossing; that the acts complained of by the plaintiffs were not its acts but the acts of officers, agents and servants of the United States. A copy of an ordinance purporting to authorize the deed to the United States and a copy of such deed were attached as exhibits to the city's answer.

The city has duly perfected an appeal from this judgment.

On demand of the city, the court filed findings of fact and conclusions of law. The city attacks the findings that neither of the plaintiffs nor their deceased son were guilty of contributory negligence. It is asserted that these findings are against the great preponderance of the evidence and should be set aside by this court; further that the evidence established as a matter of law that plaintiffs and their deceased son were each guilty of contributory negligence. It is further urged that under the undisputed evidence as a matter of law defendant owed no duty to the deceased minor with reference to the safety of the temporary crossing over Park Street

at the time he fell therefrom into the canal and was drowned.

Before a detailed discussion of the city's points, it is thought it would clarify matters to briefly recount the undisputed facts in the case. The city of El Paso is a home rule city and its charter gives it control over its streets. Park Street at all relevant times herein was a public street of the city of El Paso and ran in a generally northerly and southerly direction intersecting with the Franklin Canal at or about 8th Street. The Franklin Canal ran in a generally easterly and westerly direction through the southern portion of the city of El Paso. A part of Park Street was a bridge over the intersection of the said canal. The east and west ends of the bridge were fenced with a high metal or wire fence. This fence was connected with fences on the north and south side of the canal which prevented easy access to the canal. At all other intersections and streets this was substantially the condition of the crossings at the relevant time herein. Bridges had been constructed at such crossings prior to November 9, 1939 by the United States Reclamation Service, an agency of the United States government. The canal was fenced as above described subsequent to November 9, 1939. The general course of the canal was in 8th Street, which street, of course, ran in an easterly and westerly direction.

On the 9th day of November 1939, the City of El Paso in pursuance of an ordinance passed on the same day, executed a quitclaim deed to the United States to a right of way for the Franklin Canal. The width thereof was 40 feet on each side from the center of the canal. This deed covered that portion of Park Street involved herein. In this deed was the following reservation: "reserving to the said City of El Paso the right to use as a part of the City street system of said city all bridges heretofore constructed by the Bureau of Reclamation of the United States at the points on said canal where the same is intersected by the following described streets, alleys or other crossings: * * * Park St., * * * and there is further reserved to the said City of El Paso the right to construct and maintain at its own cost and expense such additional bridges and other structures across said canal other than those hereinabove designated as it may deem necessary."

There was this proviso in the deed: "provided, however, and this conveyance is subject to the condition that the United States shall be obligated to maintain the said bridges at the said described crossings contingent, however, upon appropriations being made therefor by Congress."

This ordinance purports to have been enacted and the deed executed under the authority conferred by Article 5244a, Vernon's Annotated Civil Statutes, which was passed in 1937 by the 45th Legislature, see Acts 1937, 45th Leg., p. 145, Chap. 77. After the execution and delivery of the deed, the Reclamation Bureau fenced the canal and from time to time made necessary repairs on the bridges therein described. These repairs were made with the assent and concurrence of the city. When it was necessary to close streets in making repairs, it was customary for the Bureau of Reclamation to obtain the consent of the city.

Prior to the 9th day of June 1943, the Peyton Packing Company notified the city that the bridge at the Park Street crossing was out of repair. The city notified the Bureau of Reclamation of the bad condition of the bridge. On June 2, 1943, in pursuance of the notice from the city, the Bureau of Reclamation undertook the repair of the bridge. It first placed barricades at the intersection of Park Street with 7th and 9th Streets, closing this portion of Park Street to vehicular traffic. Then the boards composing the flooring of the bridge were torn out and placed on the north and south ends of the bridge. The metal girders supporting the bridge were not disturbed. Work was suspended at about 5 p. m. Before leaving, the men in charge of the repair work constructed a crossing for pedestrians over the bridge. This was done by the use of some of the boards theretofore removed from the flooring. There is some conflict in the evidence as to the width of the crossing and the directions the boards composing same were laid. It did not completely cover the space occupied by the floor of the bridge. The water was not completely covered at either the east or west side of such temporary crossing. There was no guard or railing placed to prevent pedestrians from falling into the water from either side of the crossing. On leaving the bridge, the workmen placed flares on each pile of boards on either side of the bridge. The water in

the canal was five to six feet in depth and running rapidly. No watchman was left at the crossing to warn or assist pedestrians attempting to use same.

At about 8 p. m. Wartime, June 9, 1943, Lionides, the minor son of plaintiffs, aged twelve, who lived south of the canal, went on an errand to a store north of the canal. He started with a youthful companion by the name of David to cross the canal on this temporary passageway. While he was on the passageway, a girl cried out to rescue her shoe which had presumably in some way dropped in the canal. This attracted Lionides' attention and in some way he fell from the side of the crossing and was drowned in the canal.

■ In the light of these undisputed facts, the point that no duty was owing by the city to Lionides in reference to the Park Street bridge will be discussed. The Park Street bridge was a portion of a public street of the city of El Paso. It was lawfully used as such. A city with reference to its streets, owes to the lawful users thereof the duty of exercising ordinary care to maintain same in a reasonably safe condition. City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am.Rep. 517. "Control of streets is a legislative power which can not be surrendered, impaired or abridged by the city by contract or otherwise. Nor may a city's duty to its citizens with respect to its streets be assigned." 39 Tex.Jur. 597, Par. 57; Gulf, C. & S. F. R. Co. v. Sandifer, 29 Tex.Civ.App. 356, 69 S.W. 461, writ denied; Bowers v. City of Taylor, Tex.Com.App., 24 S.W.2d 816, former opinion Tex.Com.App., 16 S.W.2d 520.

The opinion in the case of Hanks v. City of Port Arthur, 121 Tex. 202, loc. cit. 209, 48 S.W.2d 944, 83 A.L.R. 278, quotes with approval sections 284 and 285 of McQuillin on Municipal Corporations, 2d Ed. We here quote a portion of Section 284: "As already seen, the duty of the city to make and keep its streets reasonably safe for travel is primary, and it cannot devolve this duty upon one with whom it contracts to do the necessary work, so as to exonerate itself from liability for his negligence in performing it."

■ Deducible from the above-cited authorities is the principle that by voluntary contract or ordinance a city cannot divest itself of the duty owing with reference to the maintenance and repair of its streets except under an authorization of the state. Of course, this does not preclude a city from making contracts with reference to the repair and maintenance of its streets. It is thought to be elementary that the city does not own its streets in a proprietary capacity. It is but a subdivision of the state government. The power it exercises over its streets is in the nature of a delegated legislative power which it can not delegate without the sanction of the State of Texas, the source of such power.

■ The deed in question was authorized, we think, by Article 5244a, Vernon's Annotated Civil Statutes. The right to use the bridge on Park Street was expressly reserved to the city. With reference to this bridge and the other existing bridges, the United States purported to conditionally contract for maintenance and repair. Maintenance and repair by the city could in no reasonable way interfere with the use of the canal. This is evidenced by the fact that the deed contains a proviso that the city might erect and maintain over such canals at its own expense such other bridges as it might deem necessary. In truth and in fact, by the reservation, the city retained the same right it had over Park Street as it did before the deed. It likewise had the same duty relative thereto.

■ It is taken to be elementary that a city having an easement to use a roadway has a right and a duty to maintain same in a reasonably safe condition. That the owner of the burdened land contracts to do this does not relieve the holder of the easement from its former public duty of maintaining the road in a reasonably safe condition. Article 5244a aforesaid authorizes conveyance with or without monetary consideration. The city did not convey the right to maintain Park Street. The relationship between the city and the United States is in no way essentially different than if the United States had been a private corporation contracting to maintain this bridge. The conveyance in no way altered or affected the duty owing by the city to the users of the street.

■ This work was done on the demand of the city. Contemplated was the bringing about of an inherently dangerous condition. There is no difference in principle in opening a ditch across a public street than removing a bridge across an existing ditch or canal. In a sense, the providing of a temporary crossing for pedestrians was

laudable, but ordinary care should have been used. The city was responsible for the exercise of ordinary care in the maintenance of this bridge. It can not shift this responsibility to its contractor so far as the public is concerned. A highly dangerous situation was brought about by the work the city caused to be performed.

The assignment here considered does not call into question the sufficiency of the evidence to support the finding that there was negligence in the manner of constructing the temporary passageway; also that it was negligence to fail to close the bridge for pedestrian traffic if impracticable to provide a reasonably safe passageway. The attack made is that the evidence fails to disclose a duty owing in the premises. It is not contended that if the evidence is sufficient to disclose such duty that it is insufficient to establish a breach thereof. In any event, the evidence sustained the finding of negligence as made by the trial court. There is no merit in the assignment and same is overruled.

■ If the findings of fact acquitting the deceased and his parents of contributory negligence are not against the great preponderance of the evidence, the evidence failed to establish as a matter of law that either the parents or the deceased were guilty of contributory negligence. Unless a violation of a statute is shown or the acts or omissions relied upon as having the quality of negligence are such that minds of reasonable men can not differ thereon, the question of contributory negligence is an issue of fact for determination on the trial. Lee v. International & G. N. R. Co., 89 Tex. 583, 36 S.W. 63; Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150.

It is contended as to the negligence of deceased: (a) He was drowned as a result of his own act in reaching for an object in the water; (b) guilty of contributory negligence in not availing himself of an available safe route a block away.

The trial court found: "The child elected to walk across the canal over the temporary bridge that had been erected for the use of pedestrians. He proceeded to walk across the bridge and when he was already part way across, a girl called to him that she had lost her shoe in the canal. He looked, quite naturally, in the direction of the voice that had hailed him. In doing so, he had to look back over his left shoulder. At this instant he somehow lost his balance and fell into the swiftly moving water of the Franklin Canal."

■ The evidence shows a boy, David, about 11 years of age, was walking behind Lionides at the time of the crossing and the fall in the canal. His account is not very clear. He does not seem to be able to speak English very clearly nor to write same with great accuracy. David, when he was testifying, made several illustrations of Lionides' motions at the time or just after the girl called. These illustrations are not described in the statement of facts. At one place on cross-examination, David said: "Well, he looked around and he stooped down and when he stooped down, he fell." He further said that Lionides did not get down on his knees; that he thought that was what he was going to do. On cross-examination, in reply to a somewhat leading question, he stated that when Lionides stooped over to reach into the water, he fell in. The trial judge saw the illustrations or demonstrations and was better able to judge as to the credibility of the witness. It can not be said that the finding of the trial judge was without support in the evidence. It would perhaps not be beyond the field of legitimate conjecture to think that the sight of the rapidly running water on either side of the boy produced a sudden vertigo. It is a matter of common experience, we think, that in some individuals, and perhaps a good many, rapidly running water in their immediate neighborhood may produce vertigo.

■ Even though the boy had stooped over to retrieve the shoe, we do not think this in and of itself would convict him of contributory negligence as a matter of law. There is no evidence, or at least no conclusive evidence, that the boy knew the deadly peril of this canal. Such a response to the call of the girl might be reasonably expected from him. From all that appears, this boy might have thought, if he had time to think, that in stooping over all he risked was a ducking in the canal. It may have so appeared to him when he undertook to cross on the planks placed there to let the public pass. The trial court made a finding of fact as follows: "The child could have crossed the canal at a reasonably safe bridge crossing a block away without any particular inconvenience to him. The child elected to walk across the canal over the temporary bridge that had been erected for the use of the pedestrians."

It is urged that from this finding it follows as a matter of law that deceased was guilty of negligence—guilty of negligence because there being a known safe passageway, he voluntarily took a dangerous way. It is clear that it was open and obvious to the deceased that this bridge was under course of construction and likewise the width and character of the temporary crossing. It does not appear, however, that he knew the depth of the water and the danger therefrom. His conclusion that he could safely cross was fortified by the fact that the boards had been laid for that purpose. It was a matter of implied representation that it was reasonably safe to cross. Others had safely crossed before him.

■ Knowledge, actual or imputed, of the danger of the way chosen is an element where contributory negligence is based on the choice of an unsafe way, there being a safe way available. Notice of the defective condition of the street does not necessarily impose the duty of refraining from travelling thereon. City of San Antonio v. Porter, 24 Tex.Civ.App. 444, 59 S.W. 922, writ refused; Houston City St. R. Co. v. Medlenka, 17 Tex.Civ. App. 621, 43 S.W. 1028, writ refused.

■ The question of deceased's contributory negligence was under the evidence, in our opinion, for the trial court. The finding thereon is not against the great preponderance of the evidence, but in our opinion is sustained thereby. The burden was upon the city to establish this defense by a preponderance of the evidence. These holdings are deemed supported in a general way by the case of Sullivan et al. v. Trammell, Tex.Civ.App., 130 S.W.2d 310, in which the Supreme Court held the application for writ of error was without merit. There an eleven year old girl was involved. Here a twelve year old boy is involved. There the girl knew of the existence of the hole negligently left in the yard. Here the boy knew of the condition of the walkway. It was there held that the girl was not guilty as a matter of law of contributory negligence. There was in the case a dissent by Justice Alexander, now Chief Justice of the Supreme Court. The action of the Supreme Court established under the evidence there that contributory negligence was not established as a matter of law.

In this case, the evidence asserted to establish contributory negligence is in our opinion not as strong as in the case discussed. In considering the acts of this boy, his age and discretion are properly taken into consideration.

■ As to the point that plaintiffs were guilty of contributory negligence, it is thought if the evidence was sufficient to raise the issue, the finding of the trial court is final. It is not shown the father had any reason to believe that his son would have occasion to use this crossing; it is not shown that the father appreciated the danger of the crossing. It is not shown that Lionides' mother had any notice of the condition of the bridge. The most that can be said is that it was an issuable fact on the trial.

The findings of fact and conclusions of law filed herein demonstrate that this case received careful and able consideration from the trial court. No error appearing, it is ordered that the judgment be affirmed.