Allene **GRIFFIN** et vir, Appellants,

v.

Leonard **CAMP** et al., Appellees.

No. 3105.

Court of Civil Appeals of **Texas.**

Eastland.

Oct. 15, 1954.

Rehearing Denied Nov. 5, 1954.

Brooks, Fergus & Brooks, Abilene, for appellants.

Judge Wiley L. Caffey, Abilene, Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

GRISSOM, Chief Justice.

Leonard, L. C. and L. L. Camp sued their sister, Ailene Griffin, and her husband for the purpose of canceling, on the ground of undue influence, deeds made to the sister

by their mother. Undue influence was defined as:

"* * * such influence or dominion by excessive importunity, imposition, or fraud, exercised at the time of making and delivering the deed, as destroys the free agency of the person making and delivering the deed and overcomes her wishes in regard to the disposition of her property to such an extent that the deed does not in fact express her wishes as to the disposition of her property, but those of the person or persons exercising the influence."

The jury found that three deeds dated February 27, 1951, executed by Mrs. Camp conveying to Ailene Griffin (1) a lot in Abilene and (2) 195.4 acres of land in Jones County and (3) conveying to Ailene Griffin and L. L. Camp Mrs. Camp's half interest in a 104 acre tract and a 103 acre tract in Jones County were executed and delivered to Mrs. Griffin by reason of undue influence exercised by her upon their mother, Mrs. Willie E. Camp. The court rendered judgment on said verdict setting aside said deeds and defendants have appealed. They present two points, namely, that the court erred in refusing to instruct a verdict for the Griffins and in overruling their motion for judgment non obstante veredicto because there was no evidence of probative force that Mrs. Griffin procured the execution and delivery of said deeds by the exercise of undue influence.

 In Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 514 (Writ Ref.), the court said:

"Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and in-

dulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.' Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150; Texas & P. R. Co. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 829; Brown v. Griffin, 71 Tex. 654, 9 S.W. 546; Texas & P. R. Co. v. Ball, 96 Tex. 622, 75 S.W. 4."

In Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199, Judge Griffin stated the law applicable to the question presented, as follows:

"* * * to sustain the action of the trial court in granting judgment non obstante veredicto, it must be determined that there is no evidence having probative force upon which the jury could have made the findings relied upon. Whiteman v. Harris, Tex.Civ. App., 123 S.W.2d 699, writ refused; Warren v. Schawe, Tex.Civ.App., 163 S.W.2d 415, writ refused.

"(6) 'It was the jury's province to weigh all of the evidence, to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable." Stephenville, N. & S. T. Ry. Co. v. Shelton, Tex.Com. App., 208 S.W. 915, 916.' Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, 618, (1–3); also 53 Am.Jur. 143, et seq. Trial, Secs. 158 and 159."

 Tersely stated, appellants contend simply that there is no evidence of undue influence. In determining whether the evidence supports the verdict the testimony must be viewed in the light most favorable thereto. A jury having found undue influence an appellate court is required to indulge the presumption that the jury believed all of the probative evidence tending to sustain its findings. The effect of undue influence must have existed at the time of the execution of the deeds and caused their

execution and delivery. Barry v. Graciette, Tex.Civ.App., 71 S.W. 309. Undue influence must have destroyed the grantor's free agency at the time the deed was executed and substituted in place thereof the will of another. But, undue influence may be proved by circumstantial evidence. Weakness of the mind, or will power, produced by infirmities of age may be considered as a circumstance in determining whether the grantor was in a condition to be susceptible to the undue influence alleged to have been exercised. An unnatural disposition of property by a grantor may be considered, along with other circumstances, in determining whether the deed was a product of undue influence. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759. See also 42 Tex.Jur. 791, 797; 7 Tex.Jur. 899.

In accordance with the rule announced in Olds v. Traylor, Tex.Civ.App., 180 S. W.2d 511, 514, and Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150, that is, discarding all evidence contrary to the verdict and giving credit to all evidence favorable thereto and indulging every legitimate inference favorable thereto which might reasonably be drawn from the facts proved, we must determine whether there is any evidence that the deeds were executed and delivered to Ailene Griffin by reason of undue influence.

Mrs. Camp's husband died in July, 1950. She stayed with her sister in Abilene from that time until she bought a home, a few months thereafter, in Abilene. She moved into the home alone but soon thereafter the Griffins' small son came to live with her and attend school in Abilene. When her last illness arrived she went to the Griffin home and remained there until she died, December 11, 1951. There was evidence to the effect that Mrs. Camp appeared to have equal love and affection for all of her children; that Mrs. Griffin was with her mother much of the time after her father's death until Mrs. Camp died, slightly less than eighteen months thereafter; that Mrs. Camp hired a seamstress but Mrs. Griffin "generally bossed all the sewing;" that Mrs. Camp was nearly 75 years old at her death; that she frequently discussed what she was going to do with her home in Abilene, that at one time she would want to give it to one of the children and then to spend it all and sometimes "you couldn't tell"; that she discussed giving it to several different people; that Mrs. Camp was not a healthy woman during the last ten years of her life; that she was easily influenced and would change her mind and be influenced by the last person who talked to her on any subject; that she made no distinction between her boys and her daughter; that she did not "favor one over the other but treated them all alike"; that she was a "very fair minded mother and would want the same for each child"; that old age affected Mrs. Camp's mind to some extent and she was forgetful; that, after she moved to Abilene following the death of her husband, "Mrs. Camp said that she had her property fixed and her children would share equally in it." That she "always" was a person who could be influenced and old age "helped that along—" "she said our plans are that the boys have the farm across the creek over on the hill from the home place. The baby, or Ailene, will have this home place."

There was testimony that during Mr. Camp's last illness, Mrs. Camp went to Abilene and stayed with her sister and after his death continued to stay there until she bought a home in Abilene; that she gave $2,700 to Mrs. Henslee, a realtor; that "she said, 'Mrs. Henslee, take this. I know you, and I know you will keep it for me.' She says, 'I don't want Ailene to find out I have it because she will talk me out of it'" There was testimony that after Mrs. Camp bought a house in Abilene, Mrs. Henslee went to her home and Leonard Camp was there "fixing her breezeway"; that Mrs. Camp said of Leonard: "He's the best boy in the world"; that on another occasion Mrs. Henslee went to see Mrs. Camp at her home and Mrs. Camp told her that her brother had just left; that he wanted to buy her "Noodle place"; that he offered her $10,000 for it; that it had three oil wells on it; that Mrs. Henslee advised her to keep it. This property, as

we understand the record, was soon thereafter conveyed to Ailene Griffin by a deed which recited a consideration of $5 and love and affection.

Mr. Manius, who lived on the Camp farm for seven years and took care of Mr. Camp in his last illness, testified that Mrs. Camp said "she didn't like to go around her daughter, that her daughter was trying to get money from her, something like that, but as far as affection, I think she thought as much of one as she did the other."

"Q. Is that her daughter Ailene? A. Yes, sir.

"Q. Now, state whether or not Mrs. Willie Camp ever said anything to you about Ailene's husband? A. Well, yes, sir.

"Q. What was it she said? A. She seemed to be afraid of Ailene's husband.

"Q. Afraid of him. Did she express that on just a few occasions or on many? A. Well, several occasions. She sent me to their home a few times to take messages with the excuse that she was afraid to go herself."

The record shows that on February 27, 1951, Mrs. Camp executed a deed to her daughter, Ailene Griffin, for a recited consideration of $5 and love and affection, conveying her home in Abilene "together with all household furnishings and fixtures and all other personal property thereon situated." On the same day and for a like recited consideration she executed a deed to her daughter to 195.4 acres of land in Jones County with three oil wells on it, which she had recently refused to sell to her brother for $10,000. At the same time, for a recited consideration of $10 and love and affection for Lawrence L. Camp and her daughter, Ailene, she executed a deed conveying to them, in equal interests, her one-half interest in a 104 acre tract and a 103 acre tract in Jones County. However, in all of said deeds Mrs. Camp reserved the use of said property during her lifetime and the right to rents and royalties therefrom. The first mentioned deed was filed for record December 15, 1952, the second on March 9, 1951 and the third on December 19, 1951. Mrs. Camp died December 11, 1951. As we understand the record, said deeds conveyed all the property owned by Mrs. Camp, with the reservation mentioned, and Leonard, the son who had recently been described as "the best boy in the world," was wholly excluded in the gifts of her property, as was L. C. Camp. One might reasonably conclude that this was an unnatural disposition of her property.

After studying the entire record and applying the rules mentioned, we conclude there was evidence of probative force to sustain the verdict.

The judgment is affirmed.