UNITED STATES FIDELITY & GUARANTY CO. v. HALL et al.   (No. 1389.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 21, 1915. Rehearing Denied Feb. 11, 1915.)

1. JUDGMENT ☞660½ — CONCLUSIVENESS — JURISDICTION.

The county court being without jurisdiction to determine the ownership of land, its order in a guardianship proceeding reciting that the land belonged to the community estate of the deceased parent of the minors is not a conclusive adjudication that the surviving parent was entitled to one-half of the property.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1171; Dec. Dig. ☞660½.]

2. GUARDIAN AND WARD ☞32—INVENTORIES —POWER OF COUNTY COURT.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3334, 4120, providing for the correction of inventories by guardians, an order of the county court finding that the property of the deceased parent belonged to her community estate, if operating merely to correct the inventory filed by the guardian, and thus within the power of the court, is only prima facie evidence that the land owned by such deceased parent

was part of her community, and may be overthrown.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 102; Dec. Dig. ☜32.]

3. PARENT AND CHILD ☜3—MAINTENANCE—DUTY TO MAINTAIN.

It is the duty of a father to support his minor children out of his own estate, though they have some property of their own.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–62; Dec. Dig. ☜3.]

4. GUARDIAN AND WARD ☜182 — SETTLEMENT.

A surety on the bond of a father who was guardian of his minor children has the burden of proving that the father was unable to support the children himself, and was therefore justified in using the corpus of their estate in their support.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 423, 623–636, 638–652, 654–663; Dec. Dig. ☜182.]

5. GUARDIAN AND WARD ☜114—SALE OF WARD'S PROPERTY—EFFECT OF SALE.

Where the interest of infants in land inherited from their mother was sold, they were entitled to the whole of the proceeds; nothing appearing to show that the purchase price included the life estate of their father.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 399; Dec. Dig. ☜114.]

6. APPEAL AND ERROR ☜931, 1054 — PRESUMPTIONS.

The admission of incompetent evidence in a suit tried to the court is not ground for reversal, where there was competent evidence to the same fact; for it must be assumed that the court based its finding on the competent evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771, 4185, 4186; Dec. Dig. ☜931, 1054.]

Appeal from District Court, Franklin County; H. F. O'Neal, Judge.

Action by Willie Mae Hall and another against the United States Fidelity & Guaranty Company and another. From a judgment for plaintiffs against defendant named, it appeals. Affirmed.

In his application to be appointed guardian of the estates of his three minor children (Ulma, Willie Mae, and Syrene) by his deceased wife, Perla B. Watson, filed in the county court of Franklin county on October 26, 1899, W. E. Watson alleged that his said wife at the time of her death owned several specified tracts of land, among them being 121 acres of the Stroud survey in said Franklin county. By an order made by said court November 6, 1899, said Watson was appointed guardian of the estates of his said children, and on November 25, 1899, he qualified as such guardian by filing his oath and bond as required by law. On the same day —to wit, November 25, 1899—Watson filed an inventory and appraisement of the property belonging to his wards, which included the 121 acres of land referred to. February 13, 1905, said Watson, as such guardian, applied to said court for an order authorizing him to sell the 121 acres of land referred to. The order was made April 20, 1905, as prayed for, but before making it the court required Watson to make and file a new bond as guardian. The new bond was in the sum of $2,500, with appellant as surety. April 22, 1905, Watson reported that, as authorized by the order of April 20, 1905, he had sold said 121 acres of land to one Holbrook for $1,600, to be paid $600 in cash and the remainder in one and two years. April 28, 1905, the court, by an order then made, confirmed the sale so made to Holbrook, and ordered Watson, as guardian, to "make proper conveyance of the said land to the said J. H. Holbrook upon his compliance with the terms of the sale." May 3, 1905, Watson, as such guardian, by his deed of that date, conveyed said land to Holbrook, receiving from him $600 in cash and his two promissory notes, each for $500, and interest thereon from its date at the rate of 10 per cent. per annum, payable to said Watson, guardian, one on November 1, 1905, and the other on November 1, 1906. A short time after he received the notes mentioned Watson sold same to one Majors. This suit was brought by two (to wit, appellees Syrene Watson and Willie Mae Hall, joined by her husband, T. D. Hall) of Watson's three wards against him and appellant as the surety on the new bond made by him as guardian. In their petition appellees alleged that Watson, immediately after he received the proceeds of the sale of the 121 acres of land, converted same to his own use and benefit. They further alleged as follows:

"Said guardian has never filed a final account, and he has not been discharged and said guardianship has not been closed and is still pending. In 1901 said guardian filed what he called an annual account, but it was never acted on by the court. This is the only account ever filed by said guardian of any kind. He has never reported to the court the collection of said $1,600 from J. H. Holbrook for said land. He has squandered the entire estate, and has abandoned the guardianship proceedings."

The trial was by the court without a jury, and, appellees having dismissed their suit so far as it was against Watson, on the ground that he was actually and notoriously insolvent, resulted in a judgment against appellant in favor of appellees for $1,955.

Hunt, Myer & Teagle, of Houston, and L. W. Davidson, of Mt. Vernon, for appellant. S. D. Goswick, of Mt. Vernon, and P. A. Turner, of Texarkana, for appellees.

WILLSON, J. (after stating the facts as above). September 2, 1901, the county court of Franklin county made an order as follows:

"Estate of Ulma Watson et al., Minors. On this day came on to be heard the application of W. E. Watson to correct the records in said cause, filed herein on the 13th day of August, 1901, and, it appearing to the court, after duly considering the same, that said application should be granted, it is therefore ordered, adjudged, and decreed by the court that the property heretofore listed as the separate property of Perla B. Watson, deceased, as shown by inventory and reports heretofore filed in this cause, be hereafter listed and dealt with in the

records of this cause as the community of the said W. E. Watson and Perla B. Watson, deceased, and that the said W. E. Watson and his bondsmen be relieved of one-half of said estate."

Appellant insists that the court, by the order above set out, determined that the lands, including the 121 acres mentioned in the statement, belonged to the community estate between Watson and his wife, and that appellees, instead of owning all of same, as shown by the inventory returned by their guardian, owned only a one-half undivided interest in same. Appellant further insists that the order was conclusive of the fact determined until set aside in a direct proceeding prosecuted for that purpose, and that, as appellees' suit was not such a proceeding, the court erred when he permitted appellees to prove that the land belonged to appellees' mother's separate estate, and to prove that appellant was estopped to deny that it was a part of said separate estate, and when he determined, as a matter of law, that the land was a part of said separate estate.

[1, 2] We do not think the trial court erred in either of the rulings complained of. So far as the order should be construed as determining the ownership of the land it was void; for the county court was without jurisdiction to try and determine such a question. White v. Shepperd, 16 Tex. 163; Bradley v. Love, 60 Tex. 472; Arnold v. Hodge, 20 Tex. Civ. App. 211, 49 S. W. 716; Miers v. Betterton, 18 Tex. Civ. App. 430, 45 S. W. 430; Groesbeck v. Groesbeck, 78 Tex. 668, 14 S. W. 792. So far as the order should be construed as operating merely to correct the inventory filed by the guardian, it doubtless was one the court had power to make. Articles 4120 and 3334, Vernon's Sayles' Statutes. But, as corrected by the order, the inventory was only prima facie evidence that the title to the land was in the community estate, and appellees had a right to prove, as they did, that the inventory, as corrected, did not speak the truth, and that, in point of fact, the land belonged to the separate estate of their mother. Little v. Birdwell, 21 Tex. 607, 73 Am. Dec. 242. Therefore the first, second, and fifth assignments are overruled.

[3, 4] It is next insisted that the trial court erred in holding that appellees "had received no part of the proceeds derived from the sale of the 121 acres of land, because it was shown that they had lived with, and were maintained and educated by, W. E. Watson for a period of 4 or 5 years after the sale of said land." It appears from the record that at the time the land was sold appellee Syrene Watson was 12 or 13 years old, and that her sister appellee Willie Mae Hall was 14 or 15 years old. If Watson was able out of his own estate to support appellees during the 4 or 5 years referred to, and did support them, in doing so he only discharged a legal duty he owed to them. Moore v.

Moore, 31 S. W. 532; Linskie v. Kerr, 34 S. W. 765. Whether he was so able to support them or not during that time cannot be determined from anything in the record on this appeal. As we think the burden was on appellant to show the existence of facts which relieved Watson from the performance of the duty resting on him to provide for his children, the assignment is overruled.

[5] We do not think there is merit in the contention made that the trial court "erred in holding appellant liable for the full two-thirds of the proceeds of the sale of the land," even if it did belong to appellees' mother's separate estate, because her husband, Watson, at her death took a life estate of one-third therein. For anything to the contrary appearing in the record, Watson still owns the life estate passing to him. What Holbrook bought and paid Watson for was the interest owned by the latter's wards in the land, and what the trial court did was to adjudge a recovery in favor of appellees of two-thirds of the sum paid by Holbrook for that interest.

[6] If the testimony of the witness Turner as to what Watson said to him about the ownership of the land was inadmissible, as claimed, the error in admitting it is not a reason why the judgment should be reversed. The trial being to the court, and there being other and competent testimony warranting the finding that the land was a part of appellees' mother's separate estate, it should be assumed that the court based his finding as to the ownership of the land on the competent testimony.

The contention made in propositions in the brief that the judgment is excessive cannot be considered, as none of the assignments present that question.

The judgment is affirmed.