**OLDS et al. v. TRAYLOR.**

No. 2597.

Court of Civil Appeals of Texas. Waco.

April 27, 1944.

Rehearing Denied June 1, 1944.

McComb & Davis, of Conroe, for appellants.

Blades, Chiles, Moore, Kennerly & Knight and W. J. Kronzer, Jr., all of Houston, for appellants on appeal only.

George B. Darden and T. F. Green, Jr., both of Conroe, for appellee.

RICE, Chief Justice.

This is a will contest. From an adverse judgment entered on the jury's verdict in the district court on appeal, contestants have appealed.

On March 29, 1940, W. H. Traylor, in the presence of attesting witnesses, executed his last will and testament, and died on the following 4th day of April. By the terms of his will he left to his two daughters (he had no other children) thirty acres in a square block out of his farm in Fort Bend County, Texas; the remainder of his estate he bequeathed to his wife, Fannie Hale Traylor. It appears that testator was divorced from his first wife, the mother of his two daughters, and that the beneficiary named in the will was his second wife, to whom he was married in 1930 and by whom he had no children. The estate of testator consisted of the 150-acre farm referred to in his will, which was his separate property.

The will was propounded for probate by the surviving wife of testator, and a contest thereto was filed by his two daughters. The pleaded grounds of contest were: (1) Lack of mental capacity; and (2) undue influence practiced on testator by his wife and others.

The jury found that testator possessed mental capacity to execute the will in question. Contestants seasonably requested the court to submit to the jury their pleaded issue of undue influence, and tendered such an issue to the court, inquiring of the jury whether the will was procured by undue influence of testator's wife and Marshall Traylor, or either of them. The court refused to submit the issue and contestants excepted and here assign the refusal of the trial court to submit such requested issue as reversible error.

As stated above, contestants pleaded that the will was void because the product of undue influence practiced on testator by his wife and others. Therefore, if there is in the record any admissible evidence of probative force raising the pleaded issue of undue influence, it was the duty of the trial court to submit to the jury the issue so raised by the pleading and the evidence. Rule 279, Vernon's Texas Rules of Civil Procedure. The failure of the trial court to submit such controlling issue, if raised by the evidence, would be reversible error. This would be true, even though the evidence raising the issue would be insufficient to support a jury's finding that the will was the product of undue influence.

The Supreme Court of this state, in a well-considered opinion rendered in Long v. Long, 133 Tex. 96, 125' S.W.2d 1034, announced certain rules of law as governing in will cases involving the question of undue influence. In so doing the court warned that it was impossible to lay down any hard and fast rule, or rules, which would accurately govern the question as to whether any given record does or does not contain affirmative probative evidence of undue influence. The court further said that while each case must stand on its own bottom as to the legal sufficiency of the facts proved, there are certain well-known rules of law that govern in cases involving undue influence. The court then proceeded to hold that the influence is not undue unless the free agency of the testator has been destroyed,

and a will produced that the testator did not desire to make; that in will cases, after mental capacity has been shown, the burden of proving undue influence is on the contestant; that because undue influence is a subtle thing, and usually involves an extended course of dealings and circumstances, it is rarely possible to establish it by direct evidence; and therefore it is the rule that undue influence can be established by circumstantial as well as direct evidence; that while undue influence and mental incapacity are two distinct grounds for avoiding a will, weakness of mind and body may be considered as a material circumstance in determining whether a person was in condition to be susceptible to undue influence; that the fact that a testator has left a will unnatural in its terms may be considered as a circumstance along with other circumstances in determining whether or not a will was the product of undue influence. The foregoing rules laid down in Long v. Long, supra, are supported by the following decisions: Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759; Craycroft v. Crawford, Tex.Com.App., 285 S.W. 275.

Bearing in mind the foregoing rules, it is our duty to determine whether there is in this record any admissible evidence of probative force, direct or circumstantial, raising the pleaded controlling issue that the will in question was the product of undue influence.

Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised "if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150; T. & P. R. Co. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 829; Brown v. Griffin, 71 Tex. 654, 9 S.W. 546; Texas & P. R. Co. v. Ball, 96 Tex. 622, 75 S.W. 4.

Applying the foregoing rules, and rejecting all evidence save that favorable to contestants, we find in this record the following testimony: At the time of his death, testator was seventy years of age; a doctor who had treated testator for approximately a year before his death testified that he had 'Bright's disease; that such disease not only affects the mind but the heart also; that toxic poisoning from Bright's disease flows all through a man's body. This witness' certificate as to the cause of testator's death showed uremia and congestive heart trouble. He testified that while Bright's disease will cause congestive heart failure, you can have congestive heart failure as a primary condition and uremia as a secondary cause; that if deceased, the day before the will was made, was talking at random and was repeating over and over again the same thing, he would not say he was normal; that he saw deceased on Sunday, March 31, 1940, at his home; that deceased had more or less difficulty in breathing and was weak; that deceased was rational and recognized him; that the principal cause of testator's death was congestive heart failure, complicated by kidney involvement.

M. J. Olds testified that on March 28, 1940, the day before the will was executed, he accompanied his wife, a daughter of testator, on a visit to her father; that they did not know he was sick until they saw him; that he was a very sick man, was gasping for breath, and was unable to raise up in bed; he was talking at random, like some person out of his head. There was evidence that a kidney medicine, a heart stimulant and a rest medicine were given testator during his last illness.

An attorney of Conroe testified that about two weeks or ten days before testator's death, two men (who were shown by the evidence to be related to Mrs. Traylor by marriage) came to his office and said that testator wanted to make a will and requested him to go and he did go, as requested, to testator's home and found the old gentleman to be in rather bad health; that testator told him he had two daughters by a prior marriage, that they were both married, and he could not recall their names; that he was undecided how to leave his property; that testator said he knew the thing to do was to leave the property to these two daughters inasmuch

as his second wife had a place; that he would ascertain the married name of his daughters and advise the attorney, and he could prepare the will; that he was never advised and did not prepare the will.

Mrs. Traylor testified that her husband was fond of his daughters, and seemed to "make right smart over" his granddaughter.

The testimony of a brother of deceased given in the County Court was introduced in evidence as follows:

"Q. You heard Mrs. Traylor say in the presence of your brother that she had written a week before, had written to Hallie and Nana to come that their father was seriously ill and asked them to come? They wrote to Hallie to come. I do not know whether they wrote to Nana or not.

"Q. That was before the making of this will? A. Yes, sir.

"Q. Your brother resented the fact they did not come to see him? A. I do not know.

"Q. When something was said about writing again, he told them not to do it? A. Yes, sir."

Marshall Traylor, a nephew of deceased, testified he wrote testator's will at the latter's request; that his uncle, on that occasion, stated to him that he wanted to leave fifteen acres of land to each of his daughters, and said that he would feel like a dirty dog if he did not leave them something; this witness further testified that on this occasion testator stated the reason he was leaving his girls so little was because they would not come to see him.

Mr. L. P. Moore, a witness for proponent, testified that he was a friend of testator's; had known him about twelve years; had visited testator in his home at 10:30 or 11:00 o'clock of the morning the will was executed; and that testator was then sitting in a chair and was rational. He also testified that he knew Mrs. Fannie Traylor; that he saw her that morning, and that he was pretty sure she was in the kitchen while he was there. He imagined testator was a pretty sick man at the time. When he arrived he saw Browder and Travis Traylor, testator's brothers. Marshall Traylor, testator's nephew, came later. After a short time, and without hearing any previous mention of a will, testator said: "Well, boys, I have thought things over and I am ready for my plans to stand as they are. I have given them some thought, and I want them to stand as they are." When the witness saw them getting things ready, he left; "it looked like they were going to take testimony or something from him."

Mrs. Traylor testified that she was not present when the will was written, having left home for Cleveland between nine and ten o'clock that morning; that the witness Moore was not at her home when she left; that he came after she left, and that he was not present while she was there; that she did not know a will had been executed until after her husband's death.

Witness Smith testified he had known testator for five years, and had worked his farm for three years. In 1938, testator told him he had kidney trouble; at that time he did not seem to be in good health; he had a nervous shaking of the hands; "he was pretty old and pretty tottering." Testator's daughter, then Hallie Hollman, was living on testator's farm and testator told witness she could stay there as long as the place was his.

Mrs. Hallie Hollman Benson, testator's daughter, testified she was living on her father's farm in 1939, that she moved there in 1934; that during her father's last illness and about a week or two before his death she received a card from her stepmother saying that her father was not very well; that there was nothing alarming in it; that the first notice she had of the serious illness of her father was a call from her sister on March 30, 1940, that she got ready and went to him as quickly as she could, reaching there that night; that she tried to talk to him. Since her father left his farm in 1939 and came to Montgomery county (on his wife's farm), she had seen him but had not been to Montgomery county to visit him until she came during his last illness.

Mrs. Nana Olds, a daughter of testator, testified that she and her husband visited her father at about 3:00 o'clock P.M. on March 28, 1940; he was then in bed; that he talked, but not directly to any person; that he never talked directly to her. She noticed her father's medicine, one was a heart stimulant and one was a kidney medicine, the other a rest medicine. She saw a bottle with a narcotic label. Her father had lost about fifty pounds since she had last seen him and was very sick. She left that night and returned Saturday night with her sister. On that Saturday night he was not rational and was about

the same as on the previous Thursday night. She had never met her stepmother before her father's last illness, had never gone to Security, where her stepmother lived, to see her father, but had seen him in Fort Bend county.

When the will was executed there were present with the testator his two brothers and a nephew. The effect of their testimony is that while the testator was a sick man, he was in possession of all of his mental faculties; that the testator stated to them that he desired to make his will, and to whom he desired to leave his property; that the nephew of testator, at the latter's request, wrote the will, read it over to testator, who expressed his satisfaction with the manner in which it was drawn, and it was then signed by testator and by the latter's brothers as attesting witnesses. These men testified that testator alone suggested the will, and that no suggestion, so far as they knew, was made to testator either that he make a will or as to the contents thereof.

The will as drawn leaves to testator's daughters 30 acres of land to be taken in a square block out of the southeast corner of testator's farm. The field notes of this farm were introduced in evidence, and therefrom it appears that the farm was irregular in shape and had two, possibly three, southeast corners. There was evidence that testator knew the boundary lines of his farm. Contestants say it must therefore be concluded that testator did not understand the business at hand at the time the will was drawn because, if he had, he would not have made a devise incapable of fulfillment.

■ Applying the foregoing rules of law to the factual situation here presented, we have concluded that the issue of undue influence is not raised by the record.

It is true that the evidence discloses that the testator was old and ill; and, viewed from contestants' standpoint alone, that he was irrational the day previous to the execution of the will, and that from these facts the jury could have inferred that the ravages of disease had impaired his mind and body to the extent that he was rendered susceptible to undue influence, although he still possessed testamentary capacity. There was evidence that he loved his daughters and that he was hurt by their, to him, seeming neglect. It is of course obvious that his wife had the opportunity, on occasions, to exert her influence if she chose so to do; and that she had a motive in that, absent a will, she would be vested by law with an estate for life only in one-third of her husband's separate real property. It may be (although we do not so hold) that the will was unnatural in that the daughters received less, and the widow more, thereunder than would have vested in these parties by the law of descent and distribution. These facts and circumstances, standing alone, are not sufficient to raise the issue of undue influence, in view of the record before us, because, in our opinion, there was no evidence, either direct or circumstantial, that any undue influence was exercised on the testator, or was operating on his will, at the time he executed the instrument under attack. On the contrary, it is undisputed that on this occasion there were present the testator's two brothers and his nephew. There is no evidence that they were partial to testator's wife, or that they were lacking in affection for his daughters. According to their testimony, the will of testator was wholly spontaneous; his wife was not present, and no suggestion was made to him as to the distribution of his estate.

■ The issue of undue influence is not raised unless the record contains some admissible evidence of probative force that such influence was exercised, and that it subverted and overpowered the will of testator and caused the execution by him of a will which he would not have executed but for such influence. Stewart v. Miller, Tex.Civ.App., 271 S.W. 311, pt. at page 316, writ refused; Rankin v. Rankin, 105 Tex. 451, 456, 151 S.W. 527.

■ Appellants timely presented to the court their motion for an instructed verdict, which the court refused to grant, and this action of the court is assigned as reversible error.

Contestants take the position that the uncontroverted evidence shows that the property sought to be described in the instrument offered for probate is impossible of location as described, and that it is conclusively shown that parol evidence cannot aid the description so as to make the same sufficiently definite and certain when applied to the land referred to in the will of testator; and therefore said will fails as a devise in all particulars, and the will is not subject to probate.

The will bequeathed to testator's daughters 30 acres out of testator's 150-acre

farm, designated as a square block in the southeast corner thereof. The field notes and plat of this tract of land show it has no right angles, and that there are at least two southeast corners. Three of the witnesses testified, in effect, that a square drawn to scale to represent the 30 acres could not be placed in any of the three southeast corners of the 150 acre tract.

We overrule this assignment. The pleaded grounds of contest in both the county and district courts were that the testator lacked testamentary capacity and the will was the product of undue influence. If there is a fatal defect in the description of the land devised to testator's daughters, it is not patent upon the face of the instrument, but arises when applied to the subject matter of the devise. The question of whether this defect renders the devise and the will itself invalid may be determined by proceedings instituted under Article 3433, Revised Statutes 1925, or by a proceeding brought to construe the will.

The question presented to the County Court, and to the District Court on appeal by the pleadings of the parties, was as to whether the instrument propounded for probate was testator's last will and testament.

In determining whether an instrument should be admitted to probate, the County Court is not required to construe it further than is necessary to determine whether the propounded writing is a will. The general rule is that in the probate of a will it is not the province or right of the court to construe the same. The matter of construction is left to the courts in a separate and independent action after the will has been probated. 44 T. J. pp. 763-4, secs. 193-194; p. 775, sec. 208; Huston v. Cole, 139 Tex. 150, 162 S.W.2d 404; Ainsworth v. Briggs, 49 Tex.Civ.App. 344, 108 S.W. 753; Allday v. Cage, Tex.Civ.App., 148 S.W. 838; Prather v. McClelland, 76 Tex. 574, 13 S.W. 543; Ellsworth v. Aldrich, Tex.Civ.App., 295 S.W. 206; Brown v. Burke, Tex.Civ.App., 26 S.W.2d 415; Harris v. Harris' Estate, Tex.Civ.App., 276 S.W. 964.

 Appellants' third point is that the trial court committed reversible error in refusing to submit to the jury two special issues requested by the contestants. One of these inquired whether the instrument propounded for probate varied in any important particular from the instructions given by testator to Marshall Traylor; the other inquired whether such variation was known to testator and approved by him at the time the instrument was signed.

We overrule this point. In our opinion the requested issues were not raised by the evidence. The witnesses present when the instructions were given and when the will was executed testified that the will was read to testator and approved by him before he signed it.

Under their fourth point appellants complain of argument of appellee's counsel to the jury. We overrule this assignment. In the first place, we do not consider the argument complained of to be of such a prejudicial nature as would warrant a reversal of this cause; in the second place, we are of the opinion that the instructions of the trial court, given to the jury at the time contestants objected to the argument, removed any ill effect that might possibly have flowed therefrom.

 By their fifth point contestants say that the trial court erred in adjudging that the district court acquired jurisdiction of the estate of W. H. Traylor, deceased, as distinguished from the appeal, and as a consequence thereof, in proceeding to administer the estate.

Mrs. Fannie Hale Traylor filed in the County Court an application to admit the will of her deceased husband to probate, alleged the existence of debts and the necessity for opening administration on his estate and prayed that she be appointed administratrix, with the will annexed.

Thereupon contestants filed their grounds of contest to the probate of the will, alleged that there was no necessity for an administration, and prayed that the application of their stepmother be dismissed.

Upon a hearing of the issues thus joined, the County Court admitted the will to probate, but found that there existed no necessity for the opening of an administration on the deceased's estate. Contestants excepted to, and appealed from, the judgment of the probate court.

On appeal in district court, the trial was de novo, to a jury, on the above mentioned pleadings. The jury found that testator was possessed of testamentary capacity, and the trial court thereupon entered judgment on the verdict of the jury in favor of proponent, and therein made a

518

finding, among others, that "the court has jurisdiction of the estate."

The judgment then decreed that the instrument propounded for probate was the last will of testator, admitted the same to probate; and decreed that administration be granted upon the estate of deceased; that proponent receive letters of administration with the will annexed, upon her taking the oath required by law and giving bond in the sum of $1,000; and provided "when the said Fannie Hale Traylor shall have qualified according to law, the clerk of the County Court shall issue letters in accordance with this judgment." The judgment proceeds to name three appraisers of the estate.

The court then decreed that said judgment be certified to the County Court, as provided by law, for observance and record; and that the County Court be governed by said judgment in future proceedings in said estate.

Article 5, Section 16, of our Constitution, Vernon's Ann.St., and Article 3290, Revised Civil Statutes 1925, vests in the County Court exclusive, original jurisdiction in matters probate. Article 5, Section 8, of the Constitution, and Article 1907, Revised Civil Statutes 1925, grant to the District Court appellate jurisdiction and general control in probate matters for appointing guardians, granting letters testamentary and of administration, probating wills, for settling the accounts of executors, administrators and guardians, and for the transaction of all business appertaining to estates.

Based on the foregoing, it has been generally held that on appeal the District Court has the same, but no greater jurisdiction than the County Court had. Goldstein v. Susholtz, 46 Tex.Civ.App. 582, 105 S.W. 219; Zieschang v. Helmke, Tex.Civ.App., 84 S.W. 436; Hefley v. Hugan, 56 Tex.Civ.App. 956, 120 S.W. 956; Cowden v. Wallace, Tex.Civ.App., 4 S.W.2d 665; Hallam v. Moore, Tex.Civ.App., 126 S.W. 908; United States Fidelity & Guaranty Co. v. Hall, Tex.Civ.App., 173 S.W. 892; Brown v. Fleming, Tex.Com.App., 212 S. W. 483; Berry v. Barnes, Tex.Civ.App., 26 S.W.2d 657. On appeal, the District Court acts de novo, Phelps v. Ashton, 30 Tex. 344; Newton v. Newton, 61 Tex. 511; Kelly v. Settegast, 68 Tex. 13, 2 S.W. 870; Tanner v. Ames' Estate, 37 S.W. 373; and its jurisdiction on appeal is as comprehensive as that possessed by the County Court, Phelps v. Ashton, supra; Harrell v. Traweek, 49 Tex.Civ.App. 417, 108 S.W. 1021; In re Ramon's Estate, Tex.Civ.App., 20 S.W.2d 351; Id., Tex.Com.App., 35 S. W.2d 699; however, it can adjudicate only such matters as were put in issue in the Probate Court. Leatherwood v. Stephens, Tex.Com.App., 24 S.W.2d 819; Quiroz v. Cantu, Tex.Civ.App., 119 S.W.2d 569, 570.

We overrule this assignment of error. In our opinion, the trial court did not assume or attempt to exercise general jurisdiction or control over decedent's estate; it did not attempt to adjudicate any matter that had not been raised by the pleadings filed in the County Court and embraced in the judgment of said court; and hence did not exceed the jurisdiction and authority conferred on it by virtue of the appeal.

For the reasons above expressed, each of contestants' assignments of error is overruled, and the judgment of the trial court is affirmed.