Margaret AYALA et al., Appellants,

v.

Edward T. MAUME, Appellee.

No. 3579.

Court of Civil Appeals of Texas.

Waco.

Oct. 16, 1958.

Rehearing Denied Dec. 11, 1958.

**700**

John D. Cabaniss, Waco, for appellants.

Witt, Terrell, Jones & Riley, Waco, for appellee.

TIREY, Justice.

This is a highway collision case. Appellants, plaintiffs below, grounded their cause of action on injuries resulting from an automobile collision that occurred on Highway 81, approximately five miles north of the City of Waco, where a local road intersects the four-lane Highway 81, such local road intersecting Highway 81 from the east line and coming to a dead end after passing through the west traffic lane of such four-lane highway.

Appellants pleaded that appellee was guilty of negligence in the following respects: (1) that immediately prior to and at the time of the collision he failed to keep a proper lookout; (2) that he was driving at a high, dangerous and excessive rate of speed under the circumstances; (3) that he failed to keep his vehicle under proper control; (4) that he was driving in excess of the legal speed limit; (5) that he failed to apply his brakes in time to avoid the collision; (6) that he failed to swerve or turn his car to the right in an attempt to avoid the collision with the pickup truck in which appellants were riding; (7) that he failed to remain on the righthand or outer lane of the east lane for northbound traffic; (8) that he drove on to the left-hand or inner traffic lane for the northbound traffic on such highway, and further alleged that each of the acts constituted negligence that jointly, severally and directly and proximately caused or contributed to cause the injuries complained of.

Pertinent to this discussion appellee filed a general denial and specially pleaded that appellants failed to keep a proper lookout

and that their failure in this behalf convicted the appellants of contributory negligence, and further pleaded sudden emergency, and that the accident was unavoidable.

The jury in its verdict found substantially: (1 and 2) that defendant in the operation of his car failed to keep a proper lookout for plaintiffs' truck, and that such failure was a proximate cause of the collision and damages; (3, 4 and 5) that defendant was driving at an excessive rate of speed under the circumstances, and that it was negligence, and that such was a proximate cause of the collision; (6, 7, 8 and 9) that defendant, immediately prior to the collision, failed to apply his brakes, and that such failure was negligence and a proximate cause, and awarded to plaintiff and his wife the sum of $1,000 as damages; (10) that the driver of the truck did not fail to keep a proper lookout; (12) "Do you find from a preponderance of the evidence, if any, that at the time and on the occasion in question Anselmo Ayala proceeded to drive his automobile into the highway when the defendant's, Edward T. Maume's, approaching automobile was so close to the intersection as to constitute an immediate hazard?", to which the jury answered "No"; (15) that the driver of the truck did not fail to give a warning to defendant of his intent to enter the highway; (18) that defendant, at the time of the accident in question, was not acting under an emergency; (20) that the collision was not the result of an unavoidable accident; (21) that the act of the driver of the truck in starting to cross the highway at a time when he could not see to his left through the window or door was not negligence.

After the verdict was returned appellee seasonably filed motion for judgment non obstante veredicto, and in the court's judgment we find this recital: " * * * and the court, having heard and considered such motion, the evidence and argument of counsel and being of the opinion and so finds that plaintiff, Anselmo Ayala, by his own testimony and admissions, was guilty of contributory negligence as a matter of law in that he failed to keep a proper lookout and he failed to yield the right-of-way to defendant's automobile at the time and place in question, at a time when defendant's automobile which was traveling upon the highway was in such close proximity to the intersection in question as to constitute an immediate hazard, and that such acts of plaintiff were a proximate cause of the accident in question; and the court is of the opinion and finds that the jury's findings as to Special Issues Nos. 10, 11, 12 and 13 should be, and the same are, disregarded and the court being of the opinion that a directed verdict for the defendant would have been proper and that such motion should be granted; * * *." The court then decreed that plaintiffs take nothing by their suit and adjudged the costs against them, to which judgment plaintiffs excepted and they have perfected their appeal to this court. (Under the court's instructions in the charge and the jury's answer to Issue No. 10, it was not required to answer Issue No. 11. This explanation applies to Issues Nos. 12 and 13, and there were no answers to Issues Nos. 11 and 13.)

The judgment is assailed on what appellants designate as three points. They are substantially to the effect that the court erred (1) in rendering judgment non obstante veredicto because plaintiff was not by his own testimony and admissions, construed in a light most favorable to him, guilty of contributory negligence as a matter of law that proximately caused the accident; (2) because there is no evidence to sustain the court's action in disregarding the special issues and in rendering judgment non obstante veredicto; (3) the evidence is insufficient to sustain the court's action in disregarding the special issues and in rendering judgment non obstante veredicto.

Before discussing each of appellants' points, we think it is pertinent for

us here to say that as a reviewing court, it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. Moreover, "Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" Citing cases. See Olds v. Traylor, Tex.Civ.App., 180 S.W. 2d 511, 514, points 8 and 9, writ ref. Moreover, "'It was the jury's province to weigh all of the evidence, to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable."'" See Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, at page 199, point 6. No rule is better settled than the one to the effect that if there is evidence of probative value to sustain the findings of the jury, the appellate court is bound by such findings. See Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88, point 3 (no writ history) and cases there collated. See also statement of the rule by our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

With the foregoing rules in mind, we now consider the testimony of Ayala, the driver of the truck. Ayala testified to the effect that he and his wife were engaged in the business of picking or pulling cotton, and that on the morning of the accident they had an engagement to meet other pickers at Lake View, some five miles out of Waco on Highway 81, at Moore's Store; that because it was a rainy day they decided it was too wet to pull cotton and they got in the pickup and started back to Waco; that the road they were traveling intersects Highway 81 from the east and that Highway 81, at the point of intersection, is a four-lane highway, with two traffic lanes provided for traffic moving northward, and two traffic lanes provided for traffic moving southward, with an esplanade wide enough to accommodate cars stopping out of the traffic lanes, until traffic clears that will permit them to enter the desired traffic lane; that when he pulled up to the east side of Highway 81 he came to a stop to let the traffic go by, and he testified in part:

"Q. What did you do after that? A. Well, I pulled up and looked and I didn't see nobody coming, and I saw Mr. Maume's car. * * *

"Q. Where was Mr. Maume's car? A. On the second cross.

"Q. On the second cross, you say. A. Yes, sir.

"Q. Are you trying to say crossing, Mr. Ayala? A. Yes, sir, crossing. * * *

"Q. Would you tell the court and jury with reference to which side of you that was on? A. On the left.

"Q. On the left side. How far was that from you? A. Oh, about 450 feet.

"Q. Are you able to judge the speed of a moving vehicle? A. Yes, sir.

"Q. How fast would you judge that Mr. Maume was traveling at that time? A. About sixty-five.

"Q. What did you do then? A. I went across—I crossed the road and stopped.

"Q. Would you draw a 'block' indicating where you stopped. * * * Where have you placed that block on the blackboard? A. Between the two roads.

"Q. That is, you have placed it in the safety zone? A. Yes, sir. * * *

"A. Well, he hit me and I don't know nothing about it, I didn't see it.

"Q. Was your car moving at the time Mr. Maume's car hit you? A. No, I was stopped.

"Q. It is your testimony that you had pulled across the highway and stopped. A. Yes, sir.

"Q. Why had you stopped? A. To let the traffic go by, so we could come home.

"Q. What part of your car did Mr. Maume's car hit? A. On the back wheel.

"Q. Which side of your car, Mr. Ayala? A. On the left. * * *

"Q. Well, why did you open the door of your truck? A. So I could look down the highway to see if any traffic was coming.

"Q. Did you have a window glass there in your truck? A. Yes, I had a window glass, but it was cracked.

"Q. It was cracked? A. Yes, sir.

"Q. Now, did you have your lights on? A. Yes, sir.

"Q. And you had your windshield wipers on? A. Yes, sir.

"Q. And you couldn't see without opening the door to look down the road? A. No, sir. * * *

"Q. Did you see Mr. Maume's car when you first stopped there? A. Yes, sir.

"Q. That's when you first stopped. A. I stopped and I looked down the road and I saw him coming down the road.

"Q. That was right after you stopped. A. Yes, sir.

"Q. Then you don't know how long you stayed there? A. No, sir.

"Q. Well, could it have been five or six seconds, or more than that you stopped there? A. Oh, about four or five seconds.

"Q. All right. You came up there and stopped and saw Maume's car and then you stayed stopped about four or five seconds. A. Yes, sir.

"Q. Now, what kind of a gear shift did you have on your pickup truck? A. I had it in low.

"Q. Well, you had a standard gear shift didn't you? A. Yes.

"Q. Then when you started up did you have to put it in low? A. Yes, sir.

"Q. You put it in low after you stayed there four or five seconds and then you moved to low. Is that right? A. Yes, sir.

"Q. And then what did you do? A. I went on across.

"Q. You went across. And you never did see Mr. Maume any more after you saw him down there, how far away? A. About 450 feet.

"Q. And you never did see him any more and you went on across. A. Yes, sir.

"Q. You didn't look any more, you just went on across. A. Yes, sir.

"Q. Did you look to your right any? A. Yes.

"Q. But you never did look back to your left, and then just went on across. A. I went on across. * * *

"Q. Now, when you saw Mr. Maume down there about 450 feet

away, you say he was going about how fast? A. About sixty-five miles. * * *

"Q. What is the basis of your conclusion that he was going—what made you decide he was going 65 miles an hour? A. When I looked down the road and saw him he was coming mighty fast. * * *

"Q. How long did you see it? Did you just look at it and then look away? A. Well, I opened the door and looked down the road and I saw him coming, and I had plenty of time to cross.

"Q. You closed the door. A. I closed the door.

"Q. And then you didn't look any more, you just went on across. A. That's right.

"Q. I believe you drew a picture there. Did you get in between the safety zone there? A. Yes. * * *

"Q. And you say you were over in that safety zone. Now, Mr. Ayala, will you draw a dotted line showing how Mr. Maume's car got over there, and how it hit you. * * * Show the path by a dotted line there of the Maume car and how he hit you. * * * Did he hit you in the back? A. No, he hit me this way.

"Q. He hit you sideways, didn't he? I mean, the front end of his car hit the left side of your car? A. Yes, sir.

"Q. How did he get around there? A. Well, he hit me, back up in the back there. * * *

"Q. You have already drawn a picture there showing where your car was, when it was stopped. Is that where it was? A. Yes, sir, between the two roads.

"Q. Is that approximately correct where you were stopped? A. Sure.

"Q. You were between those two roads? A. Yes, sir.

"Q. What I am getting at, you say Mr. Maume came around here and hit you on the left side. A. Yes. * * *

"Q. * * * I asked you how far you could see and you said 'a long ways.' I says, about how long is a long ways and you said 'about 500 feet.' Is that correct? A. Yes. * * *

"Q. Now, you say this morning it was 450 feet. Why do you increase your distance? A. Well, I don't remember * * *

"Q. Why are you increasing it this morning. Do you have any particular reason for increasing the distance? A. Well, I imagine it was about that far.

"Q. About 350 feet. Was it closer to 350 feet or 450 feet? A. 450 feet.

"Q. In other words, you were mistaken in your deposition. Is that correct? A. I guess so. * * *

"Q. When I took your deposition, I asked you this, 'Now, what I want to get down is, when you looked there you say you saw a car coming from Waco, about 350 feet'. Answer: 'Yes, sir.' 'Q. Then what did you do?' 'A. I had plenty of chance to cross the road.' 'Q. Now how fast was it going?' 'A. Oh, it was going about 60.' Now, I know there is not too much difference there, but what caused you to increase the distance a little bit this morning? A. Well, it was going around 60 or 65.

"Q. So it could have been going slower than 65. A. No, sir. * * *

"Q. Well, you said 60 miles an hour in your deposition, and this morning you are saying 65. Now, aren't

you making it go just a little faster this morning? A. No, sir. * * *

"Q. Well, let's see, what is a word for 'estimate.' Did you just 'guess,' you just guessed it to be 450 feet? A. Of course I stepped it.

"Q. Well, how did you know how far to go? Did you have anything out there that would help you 'guess' it? A. There's a sign out there at the second crossing.

"Q. And that's what you stepped off to. A. Yes, sir.

"Q. And that's what you stepped off yesterday afternoon and decided it was 450 feet. A. Yes, sir.

"Q. Then you waited four or five seconds. Is that correct? A. Yes, sir.

"Q. And you put it in low gear, and then you went on across the road? A. Yes, sir.

"Q. And you say you were in the safety zone when the collision occurred? A. Yes, sir. * * *

"Q. * * * Now, Mr. Ayala, if this car was 450 to 350 feet away, somewhere along there, why did you go on across? A. Because I had plenty of time to cross.

"Q. You said he was going 65 miles an hour. A. Well, I had plenty of time to cross.

"Q. Well, how did he get there. If you had plenty of time to cross, how did he get there and the collision happen? He did get there and you had a collision, didn't you? A. Well, all I know, I was stopped when he hit me.

"Q. How long had you been stopped over there? A. I don't know. * * *

"Q. You came to a complete stop? A. Yes, sir.

"Q. Well, what gear were you in when you came to a stop? A. I had it in neutral. * * *

"Q. In other words, you had already got over there and stopped and looked back. What did you look back for, to see if you made it? A. Well, I didn't look back when I stopped because I was already stopped. * * *

"Q. And you were completely in the safety zone? A. Sure.

"Q. All right. When we took your deposition Mr. Ayala we asked you this: 'When I got it was between them two highways.' Where was the back end of your car? 'The back end was right here in the edge of the pavement.' Is that right? Was the back end of your truck on the pavement? A. When I got hit?

"Q. Yes. A. No, sir. * * *

"Q. I asked you whether or not any part of your truck was on the pavement? A. No, sir. * * *

"Q. * * * Now I would like to know. Were you on the pavement or were you not on the pavement? A. No.

"Q. You weren't on the pavement. This is not correct then, this drawing? A. No, sir. * * *

"Q. Did you stop with a part of your truck on the paved portion of the road? A. Well, there was about half a foot sticking out.

"Q. You were stopped. A. I was stopped.

"Q. With a part of your truck sticking out on to a paved portion of the road. A. Yes, sir."

Bearing in mind the foregoing rules, did the trial court err in holding that the testimony of the plaintiff Ayala convicted him of contributory negligence as a matter of law? It is our view that he did.

In Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696, 697, our Supreme Court made this statement of the rule: "'When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.'"

In Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, at page 622, 23 A.L.R. 2d 1114, our Supreme Court made this statement: "In the case of Texas & P. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, 333, this court held that a motorist who drove his automobile on a railroad track in spite of the warning of electrically operated flasher lights was not guilty of contributory negligence as a matter of law, the court saying: 'It is obvious that had Day been more cautious, he would not have been injured. But whether the precautions he took amounted to due care was properly left to the jury.'"

In Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585, point at page 587, our Supreme Court made this statement of the rule: "It is elementary that the question of contributory negligence is generally, by reason of the very nature of the defense, one of fact for the jury to decide. Gulf, Colorado & S. F. Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S.W. 227; Temple Electric Light Co. v. Halliburton, 104 Tex. 493, 140 S.W. 426, Id., Tex.Civ.App., 136 S.W. 584; McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442. According to the authorities above cited and many others (69 Tex. 545, 7 S.W. 228), 'In order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it.'"

Our Supreme Court in Texas & N. O. Ry. Co. v. Day, Tex., 316 S.W.2d 402, re-affirmed the above doctrine. Moreover, in Texas contributory negligence and proximate cause are questions of fact to be decided by the jury except in the following respects: (a) when they consist of violation of the law; (b) or the circumstances are such that in the opinion of the court reasonable minds could not arrive at different conclusions. See Burton v. Billingsly, Tex. Civ.App., 129 S.W.2d 439 (writ ref.), point 7, at page 442, opinion dated May 1939. See also Cross v. Wichita Falls & S. R. Co., Tex.Civ.App., 140 S.W.2d 567; Wichita Valley R. Co. v. Fite, Tex.Civ.App., 78 S.W. 2d 714; Texas-Mexican R. Co. v. Hoy, Tex.Com.App., 24 S.W.2d 18; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853; Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741 (writ ref.), opinion dated June 1934; Biggers v. Continental Bus System, Tex., 303 S.W.2d 359, point 1.

Bearing in mind the factual situation here we find that the plaintiff driver approached Highway 81 from the east and that he brought his truck to a stop and opened his left car door because the glass was broken and looked to his left toward Waco and saw a car approaching at a distance he estimated to be from 350 to 450 feet, said car being in the east traffic lane. The driver closed his door and in four or five seconds he started across the four-lane highway, and he says that he had plenty of time to cross. It is true that he estimated the rate of speed at which the defendant was driving his car at 60 or 65 miles per hour, and the distance at 350 to 450 feet, but he testified that he had plenty of time to make the crossing. It is also true that when he made this decision he did not look to his left any more and proceeded to put his car in motion and attempted to make the crossing. Under his testimony he cleared the first traffic lane and almost cleared the second traffic lane, in that he reached the safety zone and the rear end of his truck was over

the pavement from one-half to one foot, and in one instance he says that he was completely within the safety zone, and he said, "I was stopped when he hit me." We think it is obvious that the plaintiff was not guilty of violating any law under the factual situation that exists here. He certainly had the right under the existing circumstances to use his judgment as to whether he should or should not attempt to make the crossing at the time and place in question and in so doing he did not violate any law.

■ We come to the next question and that is: Under all of the circumstances immediately before and at the time of the accident and under the testimony of plaintiff Ayala, could reasonable minds arrive at different conclusions as to whether the plaintiff was or was not negligent in attempting to make the crossing? We think the answer is "Yes" because the jury could acquit or convict plaintiff of negligence under the foregoing situation, but they chose to acquit him. We think the jury had the right to find, under all the facts and circumstances and the testimony of plaintiff, that plaintiff had time to make the crossing at the time he attempted to do so; and the evidence being undisputed that the defendant was in the east traffic lane traveling in a northerly direction, the jury had the right to infer that had defendant remained on his true course he would not have hit the plaintiff's truck because the plaintiff not only cleared the east traffic lane but he had also cleared substantially the second traffic lane for traffic moving in a northerly direction and had come to a complete stop before appellee struck him. It is true that Ayala testified that the rear end of his truck extended on to the pavement from one-half to one foot, but since he had reached the safety zone and had brought his truck to a stop, such action on the part of the plaintiff, under all of the circumstances, did not convict him of negligence as a matter of law. It was a question of fact for the jury. Going back to the rule stated in Olds v. Traylor, supra (and the other cases here cited), it is our view

that a court cannot say that the evidence is harmonious and consistent and the circumstances permit of but one conclusion. In the early case of Briscoe v. Bronaugh, 1 Tex. 326, 327, point at page 340, we find this statement of the rule: "The law * * has no scales wherein to weigh the different degrees of probability; still less to ascertain what weight of evidence shall amount to proof of any disputed fact. Its business is to define, to distinguish and to apply legal consequences to ascertain facts; but whether a fact be probable or improbable, true or false, admits of no legal definition. The law therefore refers the weight of evidence and of the different degrees of probability to the jury, who are to be guided in their decision by their conscientious judgment and belief under all the circumstances of the case. * * * And where the question is one of fact to be ascertained by the jury, from weighing the evidence and the degree of probability, the court will not interpose for the purpose of granting a new trial unless it be in order to remedy some manifest error. 'Where a controversy consists chiefly of questions of fact, the objections to a verdict must be very cogent to induce the court to grant a new trial.' * * * In such a case it is not enough that it is not clear that the verdict is right; but it must clearly appear that it is wrong, to induce the court to set aside the verdict." It follows that we are of the view that the court erred in granting defendant's motion for judgment non obstante veredicto. We do not think the foregoing views expressed are in conflict with the recent decisions of our Supreme Court in Lynch v. Ricketts, Tex., 314 S.W.2d 273, nor Fancher v. Cadwell, Tex., 314 S.W.2d 820, nor with the rule in In re King's Estate, supra.

Appellee in his brief says in effect that owing to the fact that the trial court rendered judgment in his behalf on his motion for judgment non obstante veredicto that he has not had an opportunity to present matters which would normally be heard on motion for new trial, and that in the event this court should reverse this cause he presents

his Cross Points 1 and 2. Point 1 is that the trial court committed a fundamental error in its charge in defining the term "proximate cause"; and Point 2 is that the trial court erred in failing to submit defendant's Requested Special Issues Nos. 1, 7, 12 and 13 and Instruction 6A to the jury.

Appellee in his brief says that the trial court defined the term "proximate cause" as follows:

"By the term 'proximate cause' as that term is used in the special issues in this charge, means that cause which in its natural and continuous sequence produces a result that would not have occurred but for such cause, and which result or some like result ought reasonably to have been anticipated or foreseen by a very competent, cautious and prudent person in the light of the attending circumstances."

Appellee says: "This definition of proximate cause occurred as a result of an error on the part of the court reporter apparently who inadvertently used the wrong definition of proximate cause given to him by the court. While the parties were preparing the charge, the defendant's attorneys objected to the court's charge and to the definition of proximate cause therein and upon completion of the dictation of the objection to that portion of the charge, the court agreed to change the definition of the term 'proximate cause'. The court then gave to the court reporter a case containing a proper definition of proximate cause and also containing the definition as above stated. The court reporter then prepared the corrected definition and the same·was then immediately read to the jury. The attorneys for the appellee had no opportunity therefore to object to said definition before it was read to the jury."

Appellee in oral argument, in further explanation of this matter, said that when the court agreed to insert a definition of proximate cause that was satisfactory to the appellee that he (appellee's leading counsel) stepped out of the courtroom for a few minutes before getting ready to make his argument, and that while he was out of the courtroom the charge was corrected by the court reporter and the foregoing definition of proximate cause was inserted in the charge; that he presumed the charge contained the definition that the trial court promised to insert in the charge and the one that he had agreed to and he did not ask that he be given an opportunity to see the charge again, nor did he make any request of the court or the court reporter to let him see the charge after it was corrected and before it was read to the jury, and that he did not get back into the courtroom until after the charge was read to the jury. Appellee's co-counsel did not state whether he was or was not present when the charge was read to the jury. Appellant's counsel said in oral argument that he did not see the charge after the correction was made, nor did he ask to see it; that he was in the courtroom all the time and heard the charge read to the jury but he was thinking about his argument he was getting ready to make and he did not discover the error and the court read it without discovering that the court reporter had inserted the wrong definition of proximate cause. As we understand appellee's counsel they did not discover the mistake made by the court reporter until after the verdict was returned and after they had returned to their office; that they thereupon decided to file their motion for judgment non obstante veredicto, and that they seasonably did so and brought the motion to the attention of the court, and after the court granted their motion they did not file any motion for new trial nor set up the mistake of the court reporter in a motion for new trial. The record does not show, and counsel did not state in oral argument when the mistake of the court reporter was first called to the attention of the trial court. It was not done by written motion. It is true that appellee raised this question by his Cross Point ·1 in his original brief filed in this cause, as follows: "Cross Point 1. The Trial Court committed a fundamental error in its charge in defining

the term 'proximate cause.'" We overrule appellee's contentions for reasons hereinafter briefly stated.

 First of all, Rule 274, Texas Rules of Civil Procedure, provides in part: "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objections. Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections." The foregoing rule is clear and explicit and there is no exception to it and we do not believe that appellee brings himself within the above rule. Nor do we see any fundamental error under the doctrine announced by our Supreme Court in Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979. See also I. C. T. Ins. Corp. v. Gunn, Tex.Civ.App., 294 S.W.2d 435, n. r. e., point at page 444. See also 3–B Tex.Jur. 34, sec. 683, also page 51; Jefferson County Drainage Dist. No. 7 v. Hebert, Tex.Civ.App., 244 S.W.2d 535 (n. r. e.).

Appellee's Cross Point 2 is that the court erred in failing to submit defendant's Requested Issues Nos. 1, 7, 12, 13 and Instruction 6A to the jury. We have considered each of the issues and special instruction and we do not think that any presents error because the matters requested were fully covered by the court's main charge. Consequently, Cross Point 2 is overruled. Perhaps we should say that a full discussion of appellee's Cross Point 2 would not have any precedential value.

It is our view that the trial court's granting of appellee's motion for judgment non obstante veredicto was erroneous and for that reason the judgment of the trial court should be reversed and judgment here rendered for appellants and against appellee in the sum of $1,000. Accordingly, the judgment of the trial court is reversed and judgment is rendered in appellants' behalf against defendant for the sum of $1,000, with six per cent interest from February 7, 1958 (the date of the jury verdict). See Fancher v. Cadwell, supra, 314 S.W.2d at page 826.